# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

|  |  |  |
|---|---|---|
| DALE HARTKEMEYER (AKA SEIGEN) | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| WILLIAM P. BARR, in his official capacity as the Attorney General of the United States; MICHAEL CARVAJAL, in his official capacity as the Director of the Federal Bureau of Prisons; and T.J. WATSON, in his official capacity as Complex Warden for Terre Haute Federal Correctional Complex, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DECLARATION OF SISTER HELEN PREJEAN**

I, Sister Helen Prejean, pursuant to 28 U.S.C. §1746(2), declare as follows:

1.      I have been a Roman Catholic sister and a member of the New Orleans based Congregation of St. Joseph since 1957. When I became a nun, I took a vow to dedicate myself to improving poor and underserved communities.

2.      In 1973, I received a Masters Degree in religious education from Saint Paul University in Ontario, Canada. I have also served as the Religious Education Director in St. Frances Cabrini Parish in New Orleans, the Formation Director for my religious community, and the founder of Survive, an organization aimed at supporting crime victims' families through the daily struggles associated with losing a loved one to violent crime.

1

3.      In addition to working with crime victim's families, I also provide ministry services to incarcerated people in prisons. I first became involved in this work in 1982 when a prison coalition asked me to correspond with prisoners on Louisiana's death-row. I agreed because I viewed it as part of my life's mission to help the poor and marginalized. Too often we as a society, and in particular those who work inside prison walls, forget that incarcerated people are just that – people. Since sending my first letter to death row, I have served as the spiritual advisor to seven death row prisoners and was present during the executions of six of these men: Elmo Patrick Sonnier (executed in 1984), Robert Willie (executed in 1984), Willie Celestine (executed in 1987), Joseph O'Dell (executed in 1997), Dobie Gillis William (executed in 1999), and James Aldridge (executed in 2015).

4.      Becoming a spiritual advisor to anyone— let alone a death-row prisoner— is a sacred responsibility. No matter the religion, those who accept this role understand that with it comes the obligation to nurture development in faith, the heart of which is that every person is capable of redemption. In this way, the moral obligation of every spiritual advisor in a carceral setting is to exemplify by their presence that prisoners have an inherent dignity as human beings and that their lives have value irrespective of their life circumstances.

5.      The heart of the responsibility of a spiritual advisor to a death row prisoner is to prepare that individual for his imminent death and to steadfastly accompany the prisoner during his time on death row and especially during his last hours and the hour of his death. This weighty and serious responsibility– one that those considering becoming spiritual advisors for death row prisoners must consider well before the government even sets a date for execution.  A spiritual advisor cannot commit to building trust and developing a relationship with a prisoner over the

2

course of years – in some cases, decades— only to abandon the prisoner when he is most in need.

6.      The importance of comforting and preparing a person for death is widely recognized across religions. Catholics, for example, receive the sacrament of Last Rites shortly before death to absolve their sins and relieve both their physical and spiritual suffering. Six times I have witnessed firsthand how the need to support the dying is exacerbated in the context of the state sanctioned killing of prisoners.  A spiritual advisor cannot guide a prisoner through death without being physically present at the execution – presence is everything.

7.      Had I not been present at each of the executions I attended, I would not have been able to fulfill my obligation as a spiritual advisor. In contrast to the way in which death row strips prisoners of their dignity, from the minute they step foot on death row, the very presence of a spiritual advisor conveys to condemned people their inherent dignity as a son or daughter of God and that, as I believe God sees them, they are worth far more than the worst thing that they have ever done.

8.      When a spiritual advisor has already formed a bond with a prisoner who then specifically requests she attend his execution, it is the advisor's moral imperative to be present. Given the personal relationship that has been built in the period leading up to the execution, a prisoner's individual spiritual advisor cannot simply be replaced by someone who does not personally know the prisoner or have a bond of trust with him.  To mechanically substitute a "generic chaplain" in the last hours of the prisoner's life – the most precious hours he has – is to demean and denigrate the essential core value of a spiritual advisor and her relationship with the prisoner. In my experience, prisoners often do not trust prison chaplains employed by the state because they are seen as playing a designated role in the very institution that is taking the prisoner's life.

3

9.      I was shocked to learn of the reckless and astounding decision of the federal government to proceed with executions during the pandemic. The very scheduling of executions to begin in two weeks – at a time when COVID-19 numbers are on the rise around the country – forces medically vulnerable spiritual advisors to put their lives at risk in order to fulfill their spiritual obligations to the prisoners that turn to them for guidance. In weighing whether or not to attend the execution during this time, spiritual advisors must also consider that having to wear a mask during the execution will impede their ability to effectively and authentically serve their role. I do not know what I would personally do if I was in the shoes of those having to make this choice – but I do know that the burden of making this choice is something the state should not force any spiritual advisor, regardless of religion, to carry.

10.     I declare pursuant to 28 U.S.C. § 1746(2) and under penalty of perjury that the foregoing facts are true and correct.

Date: June 30, 2020

_____

Sister Helen Prejean

4