**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION**

|  |  |  |
|---|---|---|
| DALE HARTKEMEYER (AKA SEIGEN) | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| WILLIAM P. BARR, in his official capacity as the Attorney General of the United States; MICHAEL CARVAJAL, in his official capacity as the Director of the Federal Bureau of Prisons; and T.J. WATSON, in his official capacity as Complex Warden for Terre Haute Federal Correctional Complex, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## DECLARATION OF REBECCA E. WOODMAN, ATTORNEY AT LAW

Rebecca E. Woodman, pursuant to 28 U.S.C. §1746(2), declares as follows:

1.      I am an attorney representing Wesley I. Purkey ("Mr. Purkey") in connection with *Purkey v. United States*, *et al.*, No. 2:19-cv-00414 (S.D. Ind.), *appeal pending* No. 19-3318 (7th Cir.), *Purkey v. Barr et al.*, No. 1:19-cv-03570, and clemency proceedings. I, along with my co-counsel Michelle M. Law, were counsel of record for Mr. Purkey on July 25, 2019 when Attorney General William Barr issued a notice scheduling Mr. Purkey for execution on December 13, 2019.

2.      Mr. Purkey's initial death warrant expired due to a preliminary injunction issued by a district court for the District of Columbia in *Roane v. Barr*, No. 19-mc-145, ECF No. 50 (D.D.C. Nov. 20, 2019) ("Protocol Case"), challenging the constitutionality of the Government's

1

lethal injection protocol. On April 7, 2020, the preliminary injunction issued in the Protocol Case was vacated by the D.C. Circuit. On June 15, 2020, the next business day after the mandate issued in connection with the D.C. Circuit litigation, Attorney General Barr issued another warrant for Mr. Purkey's execution with only 30 days' notice, setting his execution date for July 15, 2020. At the same time, Mr. Barr also scheduled the executions of three other death row prisoners for July 13, 2020, July, 17, 2020, and August 28, 2020.

3.      Mr. Purkey has not had any visits, legal or otherwise, since March 12, 2020, after which the Bureau of Prisons (BOP) suspended visitation from all of its facilities, including USP Terre Haute where Mr. Purkey is housed. On March 13, 2020, Ms. Law received an email from SCU Unit Manager Royer at USP Terre Haute stating that all legal visits were immediately suspended for 30 days, after which the suspension would be reevaluated. Ex. 1.  The same day, she received an email from her office, the Federal Public Defender for the Western District of Missouri, stating that the BOP was suspending visits bureau-wide. Ex. 2. On March 16, 2020, Ms. Law received an email from BOP Legal Counsel, who advised that case-by-case exceptions to the ban on visits may be approved pursuant to screening procedures, including "self-reporting of symptoms and temperature checks based on current CDC guidance," but that any such approved visit would be non-contact, and that "visit by phone conference" should be considered. Ex. 3. That same day, Ms. Law received an email from USP Terre Haute Special Confinement Unit (SCU) Correctional Counselor Andrew Sutton that a previously-requested visit with Mr. Purkey for an evaluation by a defense expert and forensic psychiatrist "was not scheduled and is now not considered under the circumstances." Ex. 4.

4.      Contrary to BOP Counsel's March 16, 2020 email, non-contact attorney visits were also canceled. On March 30, 2020, Ms. Law received an email from Counselor Sutton

informing her that previously-scheduled visits with Mr. Purkey on April 13, April 22, and May 1 were cancelled, and that, due to the COVID-19 outbreak, all legal and social visits would be suspended through May 3, 2020, after which the suspension would be reevaluated. Ex. 5. On April 1, 2020, the BOP instituted a total lockdown of all BOP facilities. Ex. 6. On April 8, 2020, I received an email from Ms. Law informing me that our defense team member, mitigation specialist Kathleen Cleary, who was also employed by the Federal Public Defender for the Western District of Missouri, would be prohibited by the FDO from visiting Mr. Purkey at USP Terre Haute until it could be determined that a visit would be safe for everyone. Ex. 7. On April 15, 2020, Ms. Law received an email from Counselor Sutton that our previously scheduled visits with Mr. Purkey on May 8 and May 15 were cancelled, and that all visits were suspended through May 18, 2020, after which the suspension would be reevaluated. Ex. 8. Then, on May 14, 2020, Ms. Law received an email from Counselor Sutton advising that our previously-scheduled visits with Mr. Purkey on May 20, May 29, and June 17 were cancelled, that "there will not be a resumption of visitation on May 18, 2020[,]" that "all visits scheduled for the rest of May and continuing through June are hereby postponed until further notice[,]" and that "there is no date set that visiting will begin to resume." Ex. 9.

5.      BOP Legal Counsel sent me the notice of Mr. Purkey's new execution date via email on June 15, 2020. Ex. 10. In this same email, BOP Legal Counsel represented that she would "be available tomorrow to discuss legal and social visits going forward." The next day, I sent an email to BOP Legal Counsel requesting information on arrangements being made at USP Terre Haute to facilitate access to Mr. Purkey for legal, social, and spiritual visitation given the ongoing COVID-19 crisis, and requesting copies of any written policies in this regard. *Id*. BOP Counsel responded that "[w]e do not have anything written yet but I am working on it." *Id*. The

3

public facing website for USP Terre Haute continued to announce on June 18, 2020 – as it does to this day – that all visitation is suspended at the institution, a policy that had been in place since March 13, 2020. Ex. 11.

6.      Later in the day on June 16, 2020, I spoke with BOP Legal Counsel by phone, who told me she would have written policies for COVID related safety measures within the next hour or two. She also mentioned that existing safety measures consisted of temperature checks, questions about symptoms, a mask provided to the visitors who did not already have one, and a "preference" for non-contact visits. These are the same measures instituted by USP Terre Haute in March 2020 – when BOP first started canceling visits and before any cases of COVID were reported within the facility. Ex. 3.

7.      Within two hours of this phone call, I received an email from BOP Legal Counsel stating, "We are still working on a plan that will allow as much visitation as possible while still mitigating the risk of exposure to COVID-19" and that she would have something in writing for me by the next day. Ex. 10. The following day, I received nothing.

8.      On June 19th, 20th, and 24th, I again emailed BOP Legal Counsel requesting a copy of the written policy or plan and emphasizing that members of Mr. Purkey's team are medically vulnerable and cannot travel to Terre Haute without adequate safety procedures in place. Ex. 12; Ex. 10; Ex 13. On June 24, 2020, I received an email from BOP Counsel referring me to the BOP website for "BOP's plan" for visitation. Ex 13. The link BOP Counsel provided for this visitation "plan" merely states that "[s]ocial visits are suspended" and that "[l]egal visits are suspended for 30 days, at which time the suspension will be re-evaluated." Ex 14. The information on the webpage, even today, remains unchanged from when BOP first suspended all visitation in mid-March. It provides no information about safety measures for a scheduled and

4

approved visit apart from a link to the form used to screen incoming visitors. The form asks just three questions: 1) have you traveled from or through China, Iran, South Korea, Italy, or Japan; 2) have you had close contact with anyone diagnosed with COVID-19 in the last 14 days; and 3) do you currently have a fever, chills, cough, or shortness of breath. This document is dated March 13, 2020 and contains no indication of having been updated since BOP's original suspension of all visitation on that date. Ex. 16. BOP Counsel's June 24th email reiterated the mask availability and stated that "we have hand sanitizing stations available and plexiglass has been installed in the contact visitation booth." Ex. 15. Apart from this extremely limited information, BOP Counsel provided no explanation for where and to whom the sanitizing stations would be available, or how social distancing will be enforced at the various stages of the visiting process, including the process of checking in, going through security, and moving throughout the facility on the way to and from the visiting rooms. Instead, she ended her communication on the topic of COVID-related safety measures by stating, "[i] is unclear what additional protocols you are seeking." *Id*.

9.      On June 25, 2020, I again emailed BOP Legal Counsel requesting further information. Ex. 15. On June 26, 2020, BOP Counsel responded that "sanitizing stations" will be placed "between the front entrances of the SCU [Special Confinement Unit]," but made no mention of the availability of such stations inside the facility. *Id*. BOP Counsel also stated for the first time that "our intent is to assign one visiting room to a particular inmate to further reduce any possibility of cross-contamination" but acknowledged that there are only three non-contact visiting rooms. *Id*. This also ignores the fact that the visiting rooms, even if apportioned in this way, would still be used by an unspecified number of different individuals, given each prisoner would have visits from multiple people. BOP Legal Counsel also did not elaborate on how

5

BOP's "intent" would change in the event more than three prisoners have scheduled visits. Additionally, BOP Legal Counsel's email implied this arrangement regarding non-contact visits applied only to "social" visits. Given BOP Counsel's email the previous week stating a "preference" for non-contact visits, it is still unclear what if any arrangements the BOP is making for contact visits with spiritual advisors and the members of the defense team, aside from a brief reference to plexiglass being installed in one contact visitation booth.

10.    BOP Legal Counsel made no mention of social distancing in any of our correspondence related to COVID safety measures. Other than the ad hoc, piecemeal information I have been provided by email or phone correspondence with BOP Legal Counsel, I am aware of no formal, written COVID policies or protocols beyond those measures in place in mid-March when all visitation was suspended. But it is clear that if such a policy does exist, social distancing is not a part of it.

11.    BOP Legal Counsel's June 24, 2020 email made clear that visitation at USP Terre Haute has been reinstated only for the four prisoners with execution dates. Ex. 13. Despite the immense need to for counsel to conduct in-person contact visits with Mr. Purkey in the weeks leading up to his fast-approaching execution date, no one on Mr. Purkey's team deems it safe enough to travel to USP Terre Haute despite BOP's stated "exception" to the ban on visitation for the four prisoners with execution warrants. Such visits would require virtually every member of Mr. Purkey's defense team to travel hundreds of miles, some necessarily by plane, at a time when COVID-19 infections are increasing throughout the country and public health experts advise people to stay at home. More significantly, it is impossible to make informed judgments about the true risk of visiting a federal prison with known cases of COVID-19 when BOP has failed to establish adequate safety measures or provide sufficient information about the same.

6

12.    Apart from the information outlined in this declaration, BOP Legal Counsel has provided no information pertaining to COVID-related safety measures that will be implemented on the day of the scheduled execution.

13.    Upon receiving the notification of his first scheduled execution date, Mr. Purkey designated his spiritual advisor Seigen as a witness at his execution. On June 29, 2020 I mailed a letter to T.J. Watson, the Warden of USP Terre Haute, reiterating Mr. Purkey's previous witness designations and explicitly stating that such designations will also apply to the execution scheduled on July 15, 2020. Ex. 17. I also emailed a copy of this letter to BOP Legal Counsel on the same date. *Id*.

I DECLARE PURSUANT TO 28 U.S.C. §1746(2) AND UNDER PENALTY OF PERJURY THAT THE FOREGOING FACTS ARE TRUE AND CORRECT.

DATED:  JUNE 29, 2020

REBECCA E. WOODMAN
ATTORNEY AT LAW
COUNSEL FOR MR. PURKEY

7