# Exhibit 15

**Saturday, June 27, 2020 at 13:46:07 Central Daylight Time**

**Subject:** Re: Purkey- expert visitation

**Date:** Friday, June 26, 2020 at 12:34:12 PM Central Daylight Time

**From:** Katherine Siereveld

**To:** Rebecca Woodman

**CC:** Rick Winter, MichelleLaw, Brian Fleming, ChasMcAleer, Brian Casey

Hi Rebecca,

I think there may be some confusion regarding the COVID-19 testing data you are seeking.  You are correct that the BOP webpage did not initially have detailed data about the testing, but that is no longer the case.  If you scroll to the section after the facility-by-facility breakdown of active cases, you will see a section which details the numbers of completed tests, pending tests, and positive tests.  That data is shown both in the aggregate and for each facility.  The data is further explained on the webpage under the heading "About the Data" which I have copied here:

*About the Data*

*These data are compiled from a variety of sources and reviewed by BOP Health Services staff before documented for reporting.* **Not all tests are conducted by and/or reported to BOP**. *The number of positive tests at a facility is not equal to the number of cases, as one person may be tested more than once. The number of tests recorded per site reflects the number of persons at the specific facility who have been tested, whether at that site or at a prior facility.*

As for the sanitation stations, yes, those include hand sanitizer and individual sanitizing wipes liberally available at points between the front entrance and the SCU.  This is obviously in addition to the soap and water provided in the restrooms, and any additional sanitizer you wish to request from staff.  The individual visiting rooms are wiped down before and after visits.  Additionally, to the extent possible, we are attempting to assign visiting spaces to each inmate.  For example, we have 3 non-contact visiting rooms and have so far only had social visits requested for 3 inmates.  Until we have more than those three, our intent is to assign one visiting room to a particular inmate to further reduce any possibility of cross-contamination.

I am unaware of any outstanding requests for medical and psychological records, but if you can let me know when and how you requested them, that can help me track them down.  As a general rule, the two quickest ways to receive medical and psych files is for either your client to request a copy of his own records via a request to staff, which he can then forward to you; or, request those records through the discovery process.

With regard to the outside testing you are now requesting, we cannot provide you with specifics as to the logistics for security reasons.  Once the tests are confirmed, we will be able to advise that one or more facilities will be able to conduct the testing you have requested within the diagnostic parameters you have outlined.  You will receive the results which will have the names of the facilities and medical personnel as part of the records.  To that end, I will let you know if any additional information is required to successfully schedule those tests.

The BOP does not pay for unnecessary outside tests on inmates which are not clinically indicated.  Per our medical and psychology staff, a review of Mr. Purkey's records reveals no clinical indication for the testing you are requesting.  Our medical and psychology staff simply cannot order testing which they do not believe is necessary to the care of that individual.  Please let us know how you would like to proceed.

Thanks,
Katherine

>>> Rebecca Woodman <rewlaw@outlook.com> 6/25/2020 8:39 PM >>>
Hi Katherine:

Thank you for your emails dated June 24, 2020 (4:26 p.m.) and today at 1:02 p.m.  In response, and further to my prior emails on this topic, including in particular my email dated June 20, 2020 (12:55 p.m.), I respond as follows.

Once again, your plan for visits at USP Terre Haute, which appears to be materially unchanged from the plan that was implemented prior to the COVID-19 lockdown, remains insufficient to address our concerns.

As I have stated numerous times, in order for us to make informed decisions about the safety of any visitation at USP Terre Haute – whether by Mr. Purkey's legal counsel, expert witnesses, spiritual advisors, friends or family members -- we need much more information. The critical nature of the associated risks and the essential role of data to make safety determinations should come as no surprise to you.  Indeed, the need for extensive information to evaluate COVID-19 related health risks in prisons is the subject of virtually daily court opinions (*see* the attached June 18, 2020, decision by the U.S. District Court for the District of Columbia) and media exposes.  *See* T. Thomas, "How U.S. Prisons Became Ground Zero for Covid-19," *Politico* (June 25, 2020), https://www.politico.com/news/magazine/2020/06/25/criminal-justice-prison-conditions-coronavirus-in-prisons-338022.

For example, you still have not provided all the testing data we and our experts need to evaluate the risks associated with visitations and to develop necessary mitigation risks. We are well aware of the COVID-19 statistics reporting the  number of confirmed positive cases posted on BOP's website. We are requesting critical contextual information about those positive numbers, including information about the numbers of tests administered, the number of pending test results, and the numbers of positive and negative results.  We have requested this information from you and in our court filings, but the answers have still not been forthcoming.

Additionally, we have no information from you at this time about sanitation, the frequency of surface cleaning and disinfecting throughout the buildings from the front door entry point to the visitation booths, and I have no idea what you mean when you refer to "sanitizing stations." Is that shorthand for the hand sanitizer you've mentioned in our previous correspondence? Nor is it clear what you mean by "successful visiting for the inmates who have execution dates" – since COVID-19 has a 2-14 day incubation period following exposure to the virus, the mere fact that a visitation has taken place is in no way an indicator of "success," however defined.  (It is worth noting that the apparent continued prohibition on visitations with prisoners at USP Terre Haute who are not facing execution is proof enough of the high risk to which prisoners, staff and visitors are exposed at the prison.  "Excepting" certain prisoners for pre-execution visitations does not preclude that risk.)

Leaving aside what your willingness and apparent ability now to grant Mr. Purkey an exception to be tested

says about your previous insistence on a court order (which we sought but were denied in prior litigation because there was not a *Ford* claim pending, which there now is in federal district court), many questions remain before we can go forward with any testing. Specifically, we need to know the precise logistics of accomplishing the testing in the short time period available. In which hospital will the testing take place? Does the hospital have the equipment and personnel available to conduct the blood tests, MRI, DTI, two types of PET scans (one using a radioactive tracer to measure glucose metabolism in regions of the brain , and a second measuring the deposition of an abnormal protein in the brain called amyloid-b), and EEG that we are requesting? We need to know the logistics of transporting our client for the testing, e.g., how will it be done safely, when it can be done, what steps need to be taken in order to facilitate transportation, such as what sort of paperwork will be required?

With respect to the issue of blood tests, and given that Mr. Purkey will need to be transported to a hospital for the necessary imaging tests, it seems unnecessary for prison staff to conduct the necessary blood tests, which can be performed by hospital staff.  However, to respond to your inquiry, the necessary blood tests would include the following (please excuse any layperson imprecision):

Complete Blood count and differential;
Fasting blood glucose;
Liver function tests AST ALT GGT;
Bilirubin level;
Renal function (BUN and creatine);
Thyroid;
Lyme;
Syphilis;
HIV;
B12; and
Folate.

Finally, we are not prepared to accept your denial of responsibility for the costs of testing, particularly your apparent justification that the requested testing is not "clinically indicated."  We have submitted substantial evidence in the pending *Ford* litigation to demonstrate that such testing is, in fact, warranted and clinically indicated, regardless of how such testing might also inform adjudication of the pending litigation.  That conclusion will become even more evident when we and our experts are able to review Mr. Purkey's complete medical records and video surveillance records, which we have been repeatedly requesting and which have been withheld from us.  Indeed, those records may demonstrate in further detail that the requested testing has been "clinically indicated" for some time but not administered by the Bureau of Prisons.

In closing, having confirmed for you the necessary blood tests and imaging that need to occur, we will await the details regarding how that testing will be implemented.  We will also await the full scope of COVID-19 related information we have requested and, whether extant or not, the details of <u>all</u> of the safety protocols necessary to protect the health of Mr. Purkey, prison staff and visitors given the COVID-19 statistics and conditions of the prison, on the basis of which we and our experts can determine whether and under what circumstances visits with Mr. Purkey can be scheduled and safely conducted.

Sincerely,
Rebecca

Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

---

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Thursday, June 25, 2020 at 1:02 PM
**To:** Rebecca Woodman <rewlaw@outlook.com>
**Cc:** Rick Winter <rwinter@bop.gov>, Brian Fleming <bfleming@milchev.com>, Chas McAleer <CMcAleer@milchev.com>, Brian Casey <Brian.Casey@usdoj.gov>
**Subject:** Re: Purkey- expert visitation

Hi Rebecca,
I have re-attached the email chain between Michelle Law and myself regarding the costs of the different tests which were discussed at that time. As a reminder, the BOP cannot order or pay for testing which is not clinically indicated. I am working to confirm that those costs are consistent with what they would be today. The security costs will likely remain the same, but I am running that to ground as well. Please let me know as soon as possible the specific parameters of the additional testing which was not previously identified so I can get cost estimates to you and we can begin scheduling.
Thanks,
Katherine

>>> Katherine Siereveld 6/24/2020 4:25 PM >>>
Hi Rebecca,

As discussed in our prior emails, the BOP's plan for legal visits can be found on the BOP website, https://www.bop.gov/coronavirus/covid19_status.jsp. Additionally, the Terre Haute specific numbers you requested can be found here: https://www.bop.gov/coronavirus/. I also advised that masks are to be worn at all times in the facility. If you do not have a mask, one will be provided to you. Additionally, we have sanitizing stations available and plexiglass has been installed in the contact visitation booth. We have already begun successful visiting for the inmates who received execution dates. It is unclear what additional protocols you are seeking.

In the email chain you attached between Ms. Law and I, it was clear that she was seeking a court order. While

it is still our position that any medical or psychological testing which is not clinically indicated (such as this) requires a court order, we recognize the urgency of the time frame and are willing to make an exception if you did not yet obtain a court order as indicated in the email from 10/4/2019 unless an order was issued denying your request for the outside testing.  Did the Court deny your request or was an order not sought?

BOP staff will not perform any of these tests.  All of the requested tests would need to be performed by outside medical personnel.  The only exception might be the blood tests.  BOP personnel would likely draw the blood and then send to an outside lab for the requested tests.  Do you have a list of the tests?  I believe the two attached orders are all that I have from October 2019.

Finally, I will be in a deposition tomorrow so you will likely receive an out of office reply from me.  I will still have access to email and can step out to call if necessary.

Thank you,
Katherine

Katherine N. Siereveld
Senior Attorney
FCC Terre Haute
4200 Bureau Road North
Terre Haute, Indiana 47802
(812) 238-3476


>>> Rebecca Woodman <rewlaw@outlook.com> 6/24/2020 9:30 AM >>>
Dear Katherine:

We are waiting for the BOP written safety plan/protocol/policy relating to COVID-19 in order to determine if and when it is safe to schedule an expert visit. I have requested these written materials several times now, and I renew my request here. I appreciate that BOP now appears to be open to testing by our experts after previously refusing to allow this type of testing without a court order. (See attached email correspondence.) Does this constitute a reversal of BOP's prior position? In addition, were such testing to be performed by BOP personnel, we would first need information about who would be administering the tests, the precise equipment that would be used, and the qualifications, training, and experience of the personnel who would be administering the following tests that we require:

1. An MRI with and without contrast,

2. Two types of PET scans

3. An EEG

4. A variety of blood tests

5. A lumbar puncture and cerebrospinal fluid assays (spinal tap)

6. A DTI scan

Please provide the requested information on or before close of business on Friday, June 26, 2020, so that we can make an informed judgment about scheduling expert visits.

Best,

Rebecca


Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com

---

**From:** Katherine Siereveld <ksiereveld@bop.gov>
**Date:** Tuesday, June 23, 2020 at 12:48 PM
**To:** Rebecca Woodman <rewlaw@outlook.com>
**Subject:** Re: Purkey- expert visitation

Hi Rebecca,
Just following up on this.  I know we discussed expert visits during our conversation, but I don't recall if you have made arrangements for Dr. DeRight to come to the institution?  I did not see any follow up information on these specific issues.  I went ahead and had our Medical start working on getting him scheduled for an MRI and EEG, but we will need the parameters the doctor is looking for in addition to the specific blood work he needs.
Thanks,
Katherine

Katherine N. Siereveld
Senior Attorney
FCC Terre Haute
4200 Bureau Road North
Terre Haute, Indiana 47802
(812) 238-3476


>>> Rebecca Woodman <rewlaw@outlook.com> 6/15/2020 9:38 AM >>>
Dear Katherine: As you know, our expert neuropsychologist, Dr. Jonathan DeRight, conducted an in-person evaluation of Mr. Purkey last year and found that Mr. Purkey suffers from Alzheimer's disease, a progressive dementia. Because it has been more than a year since Dr. DeRight last evaluated Mr. Purkey, it is essential that Dr. DeRight conduct an in-person follow-up evaluation to obtain a current assessment of Mr. Purkey and extent of progression of his disease, and we would like to schedule this evaluation as soon as possible. A letter that I received from Dr. DeRight requesting the in-person evaluation is attached. In addition, Dr. DeRight in his letter is requesting up-to-date neuroimaging and blood laboratory results, which are necessary to assessing Mr. Purkey's current abilities and disease progression. I recall that we have discussed ways to accomplish brain imaging tests previously, and we would like to be able to arrange such testing in conjunction with Dr. DeRight's

evaluation.

Please let me know of upcoming dates and times for Dr. DeRight to visit Mr. Purkey at USP-Terre Haute to conduct an evaluation, and the logistics of scheduling the requested brain imaging. And please don't hesitate to contact me if you have any questions. Thanks so much.

Best,
Rebecca

Rebecca E. Woodman
Attorney at Law, L.C.
1263 W. 72nd Ter.
Kansas City, Missouri 64114
(785) 979-3672
rewlaw@outlook.com