**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | |
|---|---|
| DALE HARTKEMEYER (AKA SEIGEN), <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM P. BARR, in his official capacity as Attorney General of the United States; MICHAEL CARVAJAL, in his official capacity as Director of the Federal Bureau of Prisons; and T.J. WATSON, in his official capacity as Complex Warden for Terre Haute Federal Correction Complex, <br><br> Defendants. | Case No. 20-cv-00336-JMS-MJD |

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS PLAINTIFS**

Proposed Intervenors Earlene Branch Peterson, Kimma Gurel, and Monica Veillette (collectively, the "Intervenors"), by and through their undersigned counsel, respectfully submit this brief in support of their motion (the "Motion") to intervene as plaintiffs in this action as of right pursuant to Fed. R. Civ. P. 24(a)(2) or, alternatively, with the permission of this Court pursuant to Fed. R. Civ. P. 24(b)(1).

**Introduction**

Intervenors are family members of the victims in the criminal case involving Daniel Lewis Lee. Intervenors have been selected to attend Mr. Lee's scheduled execution on July 13, 2020 as witnesses, but their undisputed rights to act as witnesses are being subverted by the Government's insistence on holding the execution during an unprecedented pandemic. Intervenors' proposed

1

complaint (the "Proposed Complaint"), attached to the Motion as Exhibit 1, details the health- and life-threatening risks that Intervenors would face if Mr. Lee's execution proceeds as scheduled on July 13. Intervenors recently learned that Plaintiff Dale Hartkemeyer ("Hartkemeyer") had commenced this action and, among other things, that he is asserting similar — but not identical — claims about the health risks associated with his attendance at Wesley Purkey's scheduled execution on July 15, 2020. Accordingly, Intervenors are seeking to join this action as plaintiffs.

Intervention is warranted here, both as of right and on a permissive basis. As discussed below, Intervenors may intervene as of right because they brought the Motion almost immediately after this action began and they have an interest in Hartkemeyer's claim under the Administrative Procedure Act ("APA"). Intervenors seek to assert a similar APA claim that would be impaired by an adverse decision in this case. Nevertheless, there are enough material differences between the two cases such that Hartkemeyer may not adequately represent Intervenors' interest. Given the liberal construction given to motions under Fed. R. Civ. 24(a)(2) and the emergency situation here caused by the impending execution of Mr. Lee, Intervenors respectfully request that the Court allow them to intervene as a matter of right.

In the alternative, the Court should grant Intervenors permission to intervene under Fed. R. Civ. 24(b)(1). All the requirements are met because the Motion is timely, there are common issues of law and fact, and there is an independent jurisdictional basis for Intervenors' claims. Moreover, judicial economy would be best served by having the overlapping issues decided by this Court rather than risking a conflicting decision from another court. Finally, there would be no adverse impact on the existing parties because, following intervention, they would be able to pursue the same claims and defenses that they currently have.

2

For these reasons, Intervenors respectfully request that the Court grant intervention through either Fed. R. Civ. P. 24(a)(2) or Fed. R. Civ. P. 24(b)(1).

## **Background**

The relevant facts are set forth in detail in the Proposed Complaint and will only be summarized here.

Intervenors, who are all family members of victims, were selected as witnesses to Mr. Lee's execution pursuant to 28 C.F.R. § 26.4 and the execution protocol released by the Federal Bureau of Prisons ("BOP") in 2019 (the "Protocol"). *See* Exh. 1, Proposed Complaint, Exhibit A. Because of the COVID-19 pandemic, their individual health characteristics, and BOP's failure to mitigate the risks, Intervenors would put their lives in peril by attending Mr. Lee's execution on July 13. *See* Exh. 1, Proposed Complaint. The BOP and other agencies scheduled Mr. Lee's execution on that date, despite the burgeoning pandemic; their refusal to recognize the clear threat to attendees' health when setting the July 13 date constitutes a violation of APA because it is the result of "arbitrary and capricious" agency action and was "not in accordance with law." *See id.* at ¶¶ 106-114.

There is overlap between the Proposed Complaint and the complaint in this case (the "Original Complaint") because there are APA claims in both that arise from the health issues of attendees that the agencies ignored in scheduling executions during a pandemic. However, Hartkemeyer is a witness because he is Mr. Purkey's spiritual advisor, while Intervenors were selected as witnesses for a different reason. In addition, the Original Complaint is not limited to an APA claim and Hartkemeyer has also asserted a claim under the Religious Freedom Restoration

3

Act ("RFRA").  There is no such claim in the Proposed Complaint.  The significance of these differences between the complaints is discussed below.

__Argument__

I.      **Intervenors Satisfy the Requirements for Intervention as of Right.**

Under Fed. R. Civ. P. 24, a party may intervene as of right if it (a) files a "timely motion" to intervene; (b) "claims an interest relating to the property or transaction that is the subject of the action"; (c) "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest"; and (d) shows that "existing parties" do not "adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

"As a general principle, courts construe Rule 24(a)(2) motions liberally."  *Elouarrak v. Firstsource Advantage, LLC*, Case No. 1:19-cv-03666, 2020 WL 291364, at *1 (N.D. Ill. Jan. 21, 2020); *see also Miami Tribe of Okla. v. Walden*, 206 F.R.D. 238, 241 (S.D. Ill. 2001) (noting that, because of the liberal construction, courts "should resolve doubts in favor of allowing intervention").  The Seventh Circuit has held that the courts, in evaluating a motion to intervene, "must accept as true the non-conclusory allegations of the motion." *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995).  "A motion to intervene as a matter of right, moreover, should not be dismissed unless it appears to a certainty that the intervenor is not entitled to relief under any set of facts which could be proved under the complaint." *Id.* (quoting *Lake Investors Dev. Group v. Egidi Dev. Group*, 715 F.2d 1256, 1258 (7th Cir.1983)).

Intervenors satisfy each of the requirements in FRCP 24(a)(2) for intervention as of right.

A.      **The Motion Is Timely.**

In assessing the timeliness of an application to intervene, the courts have stated that "potential intervenors need to be reasonably diligent in learning of a suit that might affect their

4

rights, and upon so learning they need to act reasonably promptly." *Reich*, 64 F.3d at 321 (quotation omitted). The courts "must also consider the prejudice to the original parties if intervention is permitted and the prejudice to the intervenor if his motion is denied." *Id.*

Here, the Motion has been filed only <u>five</u> days after the Original Complaint and, as of this date, there have been no other pleadings filed in this case. Thus, Intervenors acted promptly. In addition, there would be no prejudice to the original parties if intervention is permitted because Intervenors are raising similar issues and the defendants may interpose defenses that are similar to the ones they would assert in defense of the Original Complaint. On the other hand, the prejudice to Intervenors would be substantial if the motion is denied because Lee's execution is only one week away and Intervenors are in need of immediate relief.

**B.     Intervenors Have an Interest in the Subject Matter in This Action.**

The second element requires that a proposed intervenor have "a 'direct, significant[,] and legally protectable' interest in the question at issue in the lawsuit" which is "unique to the proposed intervenor." *Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 658 (7th Cir. 2013) (citation omitted).

Here, Intervenors have a direct, significant and legally protectable interest in the questions before the Court because they, like Hartkemeyer, have alleged that the COVID-19 pandemic will adversely affect their ability to attend an execution at USP Terre Haute. Both Hartkemeyer and Intervenors assert that the agencies' setting of the executions for mid-July 2020 was in violation of the APA because they did so without considering the dire health risks that those attending the

executions will face.  *Compare* Original Complaint, ¶61 *with* Exh. 1, Proposed Complaint, ¶¶106-114.

Intervenors have the requisite interest in whether this Court agrees that there is an APA violation in connection with Purkey's execution because it would enhance the likelihood of a similar ruling on Intervenors' APA claim.  However, Intervenors' interest is also unique to them because Hartkemeyer only seeks relief in the Original Complaint as to himself.  Therefore, even if the Court were to enjoin Purkey's execution from proceeding on July 15, 2020, Intervenors would need a ruling that delays Mr. Lee's execution as well.

### C.      Disposition of This Action Could Impair Intervenors' Claim.

"Impairment exists when the decision of a legal question ... would, as a practical matter, foreclose the rights of the proposed intervenor in a subsequent proceeding."  *Shea v. Angulo*, 19 F.3d 343, 347 (7th Cir. 1994) (citation omitted).  Here, the overlap between the APA claims in the Original Complaint and those in the Proposed Complaint means that the Court could reach a decision that would foreclose Intervenors' claims.  For example, the Court could find that there was no arbitrary and capricious agency action because defendants in this case (who are the same as the defendants in the Proposed Complaint) adequately considered the effect of COVID-19 on those attending executions.  Under those circumstances, Intervenors would be deprived of one of their claims before having had the chance to litigate it.

### D.      Hartkemeyer Might Not Adequately Protect Intervenors' Interest in the APA Claim.

This prong is satisfied if the party seeking to intervene shows that the existing party's representation of the interest "may be" inadequate, and "the burden of making that showing should be treated as minimal."  *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

"[T]he applicant should be treated as the best judge of whether the existing parties adequately represent his or her interests, and . . . any doubt regarding adequacy of representation should be resolved in favor of the proposed intervenors." *Miami Tribe of Okla.*, 206 F.R.D. at 243 (quotation omitted). A proposed intervenor has made a sufficient showing "if it demonstrates that the existing parties' interests are not completely identical to and may come into conflict with its own interests." *Id.* (citing *Trbovich*, 404 U.S. at 538 n.10).

Despite the overlap, the claims in this action and in the Proposed Complaint are not identical. Hartkemeyer asserts that he has the right to attend Mr. Purkey's execution because he is a spiritual advisor, whereas Intervenors' claim is based on their status as members of the victims' families who have been chosen to attend Mr. Lee's execution as witnesses. Moreover, Intervenors have a single claim for violation of the APA. Hartkemeyer, however, has two causes of action — one for a violation of RFRA and one for a violation of the APA — and he only needs to show a likelihood of success on one claim to obtain a preliminary injunction. Therefore, Hartkemeyer could focus on the RFRA claim and, in so doing, he would not adequately protect Intervenors' interest in the APA claim.

In this regard, it is noteworthy that Hartekemeyer's RFRA claim is far more prominent in the Original Complaint than the APA claim. Intervenors are not suggesting that Hartkemeyer's APA claim suffers from any deficiencies or is not adequately pled. Instead, the point is that there is some conflict between the two complaints because Hartkemeyer could achieve the relief he seeks solely through the RFRA claim, but Intervenors path is through their APA claim.

## II. Intervenors Satisfy the Requirements for Permissive Intervention.

Fed. R. Civ. P. 24 also provides that "[o]n timely motion, the court may permit anyone to intervene who. . . has a claim or defense that shares with the main action a common question of law

or fact." Fed. R. Civ. P. 24(b)(1). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Thus, a party seeking permissive intervention "must demonstrate that (1) it shares a common question of law or fact with a party, (2) its application is timely, and (3) the court has independent jurisdiction over its claims." *In re Disc. Zone Sec. Litig.*, 181 F.R.D. 582, 589 (N.D. Ill. 1998). "Other than these requirements, 'intervention under 24(b)(2) is entirely discretionary … In exercising that discretion, the court must give some weight to the impact of the intervention on the rights of the original parties.'" *Id.* (quoting *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995)) (alteration in original). Finally, the Seventh Circuit has stated that permissive intervention is essentially "about economy in litigation." *City of Chi. v. FEMA*, 660 F.3d 980, 987 (7th Cir. 2011)

Intervenors satisfy the three requirements identified in Fed. R. Civ. P. 24(b). *First*, as noted above, there are common issues of law and fact because, in both complaints, there is an APA claim based on the agencies' failure to consider and adequately deal with the pandemic's impact on those attending executions. *Second*, the Motion was brought soon after commencement of this action and it is indisputably timely. *Third*, the Court has independent jurisdiction over Intervenors' claims because there is federal question jurisdiction under 28 U.S.C. § 2201. *See* Exh. 1, Proposed Complaint, ¶11.

Turning to the other factors, intervention would not have an impact on the rights of the existing parties. Hartkemeyer will still be able to litigate his claims and Defendants will not be adversely affected in raising their defenses. Instead, allowing intervention would promote judicial economy. "Perhaps the most obvious benefits of intervention in general are the efficiency and

consistency that result from resolving related issues in a single proceeding," rather than "creat[ing] additional litigation and the possibility of conflicting results." *Sec. Ins. Co. of Hartford*, 69 F.3d at 1381. The same benefits apply to this case, where the parties overlapping claims and defenses could be handled in a single proceeding rather than multiple cases.

### Conclusion

Intervenors have shown that there is an ample basis for intervention in this case. Therefore, they respectfully request that the Court allow for intervention as of matter of right under Fed. R. Civ. P. 24(a)(2) or, in the alternative, by permission under Fed. R. Civ. P. 24(b)(1).

Respectfully submitted,


/s/ H. Baker Kurrus

H. Baker Kurrus, PLLC
10816 Crestdale Lane
Little Rock, AR 72212
Phone: (501) 831-0325
Email: Bkurrus@aol.com
Arkansas Bar No. 80082


*Counsel for Plaintiffs*


Date:   July 7, 2020

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 7, 2020, a copy of the foregoing Motion to Appear *Pro Hac Vice* was provided via ECF notification to all counsel of record.

<u>  /s/ H. Baker Kurrus  </u>
H. Baker Kurrus

H. Baker Kurrus, PLLC
10816 Crestdale Lane
Little Rock, AR 72212
(501) 831-0325