UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

|  |  |  |
|---|---|---|
| DALE HARTKEMEYER (AKA SEIGEN) | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| EARLENE B. PETERSON, | ) | |
| KIMMA GUREL, and | ) | |
| MONICA VEILLETTE, | ) | |
| | ) | |
| Proposed Intervenors, | ) | Case No. 2:20-cv-00336-JMS-DLP |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM P. BARR, in his official | ) | |
| capacity as the Attorney General of the | ) | |
| United States; MICHAEL CARVAJAL, in | ) | |
| his official capacity as the Director of the | ) | |
| Federal Bureau of Prisons; and T.J. | ) | |
| WATSON, in his official capacity as | ) | |
| Complex Warden for Terre Haute Federal | ) | |
| Correctional Complex, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE TO INTERVENE BY
PROPOSED INTERVENORS EARLENE B. PETERSON, KIMMA GUREL, AND
MONICA VEILLETTE**

Defendants (the "Government"), by and through counsel, respectfully oppose the intervention of Earlene Branch Peterson, Kimma Gurel, and Monica Veillette ("Proposed Intervenors"), who are the extended family members of the victims of Daniel Lewis Lee, a death row inmate scheduled to be executed on July 13, 2020. Proposed Intervenors argue that they are entitled to intervene as of right under Federal Rule of Civil Procedure 24(a)(2), or, permissively, under Rule 24(b)(1)(B). Intervenors' motion should be denied because they do not satisfy the requirements of Rule 24.

- 1 -

First, Proposed Intervenors have no right to intervene because their motion is untimely; they cannot show an impairment of their interests by the disposition of the action; and the Government will be substantially prejudiced if they are allowed to intervene. Second, permissive intervention is not warranted because the Proposed Intervenors' allegations are futile. Indeed, as the Government's opposition to Rev. Hartkemeyer's motion for preliminary injunction demonstrates, *see* ECF No. 33, Rev. Hartkemeyer is unlikely to succeed on the merits of his Administrative Procedure Act ("APA") claim, which is substantially the same as Proposed Intervenors' APA claim. Moreover, as established by the attached declaration of Rick Winter, the Federal Bureau of Prison ("BOP") will take every precaution to avoid the spread of COVID-19 to Proposed Intervenors, including providing them with Personal Protective Equipment ("PPE") in the form of a surgical face mask, gloves, a gown, and a plastic face shield, on the day of the execution should they choose to attend. Decl. ¶ 11.

## **ARGUMENT**

## I.   **PROPOSED INTERVENORS DO NOT SATISFY THE REQUIREMENTS TO INTERVENE AS OF RIGHT UNDER RULE 24(a)(2)**

To intervene as of right under Rule 24(a)(2), Proposed Intervenors must demonstrate that they filed a timely application to intervene; that they have an interest relating to the subject matter of the action; that their interests would be impaired, as a practical matter, by the disposition of the action; and that Rev. Hartkemeyer inadequately represents them in this action. *See State v. City of Chicago*, 912 F.3d 979, 984 (7th Cir.), *cert. denied sub nom. Fraternal Order of Police Chicago Lodge No. 7 v. Illinois*, 140 S. Ct. 82 (2019) (quoting *Shea v. Angulo*, 19 F.3d 343, 346 (7th Cir. 1991). Even accepting as true "the non-conclusory allegations of the motion," *Reich v. ABC/York-Estes Corp.*, 64

F.3d 316, 321 (7th Cir. 1995), Proposed Intervenors cannot meet their burden on any of these elements.

To begin, the proposed intervention is untimely. Under Seventh Circuit precedent, courts "look to four factors to determine whether a motion is timely: (1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances." *City of Chicago*, 912 F.3d at 984 (internal quotation marks and citations omitted). As is self-evident, the timeliness factors dovetail closely with the other Rule 24(a)(2) factors.

Intervernors contend that their motion is timely because they filed it five days after Rev. Hartkemeyer filed his complaint. But that is hardly the relevant time period under the circumstances. The Government announced the re-scheduling of Mr. Lee's execution more than three weeks ago,[1] and Proposed Intervenors were informed of that date shortly thereafter to begin their travel arrangements. Winter Decl. ¶ 5. Yet they waited until now, five days before Lee's execution, to claim that the execution date is arbitrary and capricious and not in accordance with law. Thus, although Proposed Intervenors assert that they did not know about this particular case until it was filed, "the length of time the intervenor[s] knew or should have known of [their] interest" in objecting to the scheduling of Mr. Lee's execution precludes a finding of timeliness. *See City of Chicago*, 912 F.3d at 984. And despite their assertion that "intervention would not have an impact on the rights of the existing parties," Mot. at 8, intervention would disrupt the schedule of this case, which the Court amended just yesterday to accommodate the Government's request that the briefing schedule be shortened to allow sufficient time for the parties to seek immediate appellate

---

[1] *See* Press Release, Dep't of Justice, "Executions Scheduled for Four Federal Inmates Convicted of Murdering Children" (June 15, 2020), https://www.justice.gov/opa/pr/executions-scheduled-four-federal-inmates-convicted-murdering-children.

relief, including to allow the Seventh Circuit and potentially the Supreme Court sufficient time to review any stay application relating to the grant or denial of a preliminary injunction. *See* Defs.' Mot. to Amend Briefing Schedule, ECF No. 32 at 1 (July 6, 2020); *see also* Order on Mot. to Amend Briefing Schedule, ECF No. 33 (July 6, 2020) ("Order to Amend"). The Government thereafter promptly filed their response to Rev. Hartkemeyer's preliminary injunction motion yesterday, two days before it was originally due.

To that end, the Government would be prejudiced by the requested intervention because it would significantly hamper, if not foreclose, appellate review of a grant of Rev. Hartkemeyer's pending preliminary injunction motion, as Mr. Lee's execution date is two days *before* Mr. Purkey's execution date. Indeed, Proposed Intervenors have already filed a proposed PI, which incorporates by reference Rev. Hartkemeyer's APA arguments but which also presents an additional APA claim that Defendants' actions are "not in accordance with law." ECF No. 44-2 at 3-4. Thus, should intervention be granted, it inevitably will cause further delay, contrary to the Government's strong interest in ensuring sufficient time for appellate review if needed.

As the Proposed Intervenors themselves acknowledge, a tremendous amount of planning goes into carrying out an execution, including the mobilization of 300 BOP and FCC Terre Haute staff supplemented by staff from various federal, state, and local law enforcement agencies. *See* ECF No. 35-1, Proposed Compl. ¶ 100 (citing *In re Matter of Federal Bureau of Prisons' Execution Protocol Cases*, No. 1:19-mc-145-TSC, Declaration of Rick Winter ("Winter Decl."), ECF No. 54 (D.D.C. No. 21, 2019), ¶ 7). And, contrary to the allegations underlying Proposed Intervenors' putative APA claim, the Government has undertaken extensive additional efforts to plan for the upcoming execution in light of COVID-19, including numerous safety and mitigation measures. Put simply, executions are carefully choreographed endeavors that cannot be re-started on a moment's notice. The Government has already briefed its opposition to Rev. Hartkemeyer's motion for

- 4 -

preliminary injunction and the reply is due today. Adding an additional briefing schedule to accommodate Proposed Interveners' untimely motion is plainly prejudicial.

Meanwhile, Proposed Intervenors will not be prejudiced if they do not intervene in this case. Proposed Intervenors can file their own separate suit to seek any relief to which they may be entitled as to Mr. Lee's execution. In any event, because Rev. Hartkemeyer's spiritual duties involve him visiting Mr. Purkey prior to the execution and being in the execution room itself, Proposed Intervenors will face even less exposure than Rev. Hartkemeyer's limited exposure. Rather, of the three Proposed Intervenors, only one— Ms. Veillette—has elected to be in the execution facility witness room; the other two Proposed Intervenors have elected to remain in a staging area during the execution, where they will have access to hand sanitizer and a restroom with a sink and hand soap, and where there is ample room for social distancing. *See* Winter Decl. ¶ 11, 12. As to Ms. Veillette, she will be accompanied in the witness room by only two other witnesses, who will have access to PEE, and a small number of BOP staff who will be wearing face masks. *Id*. ¶ 12. Hand sanitizer will be available and the witnesses will have access to a sink with hand soap. *Id*. Additionally, upon being picked up at a designated location off the grounds of Terre Haute Federal Correction Complex, all three Proposed Intervenors will be provided the opportunity to utilize PPE, in the form of a surgical face mask, gloves, a gown, and a plastic face shield. Winter Decl. ¶ 11. They will then be escorted to FCC Terre Haute and through security to the staging area described above. *Id*. At the conclusion of the execution, Ms. Veillette and the other witnesses in the execution facility witness room will be escorted back to the staging area, and the rest of their group will be picked up and escorted back to the designated area from which they were picked up in the first instance. *Id*. ¶ 13.

While Proposed Intervenors attempt to draw the Court's attention to their own concerns regarding COVID-19, the bottom line is this: BOP is prepared to take the same extensive array of precautions to mitigate the risk to Proposed Intervenors' health as it

plans to take for Rev. Hartkemeyer.  *See* Defs.' Opp. at 6-8, 16-18 & Ex. A; *see also* Decl. of Rick Winter, Ex. A (July 7, 2020) (adopting for purposes of the Government's opposition to Proposed Intervenors' intervention motion, the July 6, 2020 Declaration of Rick Winter, which is Exhibit A to Defs.' Opp.).  Thus, Proposed Intervenors will not be prejudiced if they do not become parties to this case.

Finally, and perhaps most importantly, it is clear that Proposed Intervenors have no "legally protectable interest" that can arguably be said to be impaired.  *See Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 658 (7th Cir. 2013) (citation omitted).  As the Government explained in its opposition to Rev. Hartkmeyer's motion for preliminary injunction, the Attorney General's decision to schedule Mr. Lee's execution was an agency action committed to agency discretion by law, and is therefore unreviewable under the APA.  *See* 5 U.S.C. § 701(a)(2).  Furthermore, Proposed Intervenors are not within the "zone of interests" protected by the Federal Death Penalty Act ("FDPA"), or any relevant regulation.  *See Am. Fed'n of Gov't Empls., Local 2119 v. Cohen*, 171 F.3d 460, 465 (7th Cir. 1999).  And the Attorney General's decision was not arbitrary and capricious.  Even aside from the compelling government interest in the timely enforcement of capital punishment, Department of Justice regulations mandate that the BOP Director schedule executions promptly after the lifting of the stay of a previously scheduled execution.  28 C.F.R. § 26.3(a).  BOP is acutely aware of the risks posed by the COVID-19 pandemic and has taken appropriate measures to mitigate those risks while still performing its important duties.

And it makes no difference that Proposed Intervenors were selected as witnesses to Mr. Lee's execution pursuant to 28 C.F.R. § 26.4.  That regulation plainly gives the Warden discretion to select witnesses; it does not create any legally cognizable right or interest for the witnesses whom the Warden select, and it certainly does not dictate that BOP must schedule executions based on those witnesses' availability.  Thus, because neither the APA nor DOJ regulations give Proposed Intervenors the right to challenge the Government's

- 6 -

execution schedule, Proposed Intervenors, like Rev. Hartkemeyer, have no legally protectable interest allowing them to intervene. S*ee Wisconsin Educ. Ass'n Council*, 705 F.3d at 658.

## II.   INTERVENORS SHOULD NOT BE PERMITTED TO INTERVENE BECAUSE THEIR CLAIM IS BOTH UNTIMELY AND FUTILE

Although the Government respectfully defers to the Court's discretion, permissive intervention is inappropriate in this case because, for the same reasons discussed above, Intervenors' motion is untimely. Accordingly, Intervenors do not satisfy the threshold requirement for intervention: "a timely motion." Fed. R. Civ. P. 24(b)(1).

Further, "Permissive intervention allows the district court to consider a wide variety of factors," *Planned Parenthood of Wisc. v. Kaul*, 942 F.3d 793 (7th Cir. 2019), including whether intervention would be futile. *See, e.g.*, *In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.*, Nos. 02–1484, 02–8472, 2008 WL 2594819, *5 (S.D.N.Y. Jun. 26, 2008) ("[C]ourts have held that futility is a proper basis for denying a motion to intervene.").[2] For the reasons discussed above, and as further demonstrated by the Government's recent opposition to Rev. Hartkemeyer's motion for preliminary injunction ("Opposition"), Intervenors' putative APA claim lacks merit. *See* Defs.' Opp. to Mot. for

---

[2] In *Merrill Lynch*, the court cited the following in support of its futility point: *U.S. v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (upholding district court's denial of motion to intervene on futility grounds); *Williams & Humbert, Ltd. v. W. & H. Trade Marks, Ltd.*, 840 F.2d 72, 74 (D.C. Cir. 1988) (finding that Rule 24(a)(2)'s requirement that intervenor have legally cognizable interest depends in part on whether intervenor has stated legally sufficient claim); *Kirby v. Coastal Sales Assocs.*, 199 F.R.D. 111, 118 (S.D.N.Y. 2001); *Moss v. Stinnes Corp.*, No. 92 Civ. 3788(JFK), 1997 WL 530113 (S.D.N.Y. Aug. 25, 1997), *aff'd* 169 F.3d 784, 785 (2d Cir.1999) ("Mr. Moss' motion to intervene is denied because his proposed claims in intervention fail to state a valid claim for relief."); *Ceribelli v. Elghanayan*, No. 91 Civ. 3337, 1994 WL 529853 at *2 (S.D.N.Y. Sept. 28, 1994) (noting that legal futility is a basis for rejecting a proposed intervention under Fed. R. Civ. P. 24); *see also* Charles Alan Wright, Arthur R. Miller, and Mary Kay Wright, 7C Federal Practice & Procedure, § 1914 (3d ed.) at p. 523–24 (stating that "[t]he proposed pleading [in intervention] must state a good claim for relief or a good defense").

Prelim. Inj., ECF No. 33 [hereinafter, "Def.'s Opp."]. That Proposed Intervenors also attempt to assert, in a single paragraph, that the selection of the execution date was "not in accordance with law" does not cure the futility of their intervention motion. That APA claim is based on DOJ regulation 28 C.F.R. § 26.4, which Rev. Hartkemeyer similarly invoked as part of both his APA and RFRA claims, *see* ECF No. 7 at 17, 23, 26. The Government has already demonstrated that the DOJ regulation makes no difference in this case, as it "is plainly intended for the condemned inmate's benefit and in no way dictates that BOP must schedule executions based on the availability of the inmate's spiritual advisor" or, in Proposed Intervenors' case, witnesses to the execution. ECF No. 33 at 13. It would therefore be futile for the court to grant Proposed Intervenors' motion for permissive intervention.

Finally, it is worth noting that if the Court is to weigh any equities here, they clearly favor the Government. Twenty years ago, Mr. Lee was convicted and sentenced to death for murdering all three members of an Arkansas family, including an eight-year-old girl, by shooting them with a stun gun, duct-taping plastic bags over their heads, weighing their bodies down with rocks, and drowning them in a bayou. The Government's interest in promptly implementing Mr. Lee's sentence is "magnified by the heinous nature" of his offense. *Execution Protocol Cases*, 955 F.3d at 127 (Katsas, J., concurring) (discussing Mr. Lee's crimes). Mr. Lee's conviction and sentence were affirmed on appeal, and his motions for post-conviction relief have been rejected, culminating in multiple denials of certiorari by the Supreme Court. As such, the Government's interest in finally implementing the lawful capital sentence of Mr. Lee outweighs Intervenors' interest in delay.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the motion for leave to intervene.

JOSH J. MINKLER
United States Attorney


By: _s/Shelese Woods_____
   Shelese Woods
   Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 8, 2020, the foregoing was filed electronically

through ECF/CM.  On this same date, electronic service will be made to all counsel of

record through the Court's ECF/CM system.


s/ *Shelese Woods*
Shelese Woods
Assistant United States Attorney


Office of the United States Attorney
10 West Market Street, Suite 2100
Indianapolis,  IN 46204
(317) 226-6333
(317) 226-6125  [Fax]