UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

|  |  |  |
|---|---|---|
| DALE HARTKEMEYER (AKA SEIGEN) | ) ) | |
| Plaintiff, | ) ) ) | |
| FATHER MARK O'KEEFE, | ) ) | |
| Proposed Intervenor, | ) ) | Case No. 2:20-cv-00336-JMS-DLP |
| v. | ) ) ) | |
| WILLIAM P. BARR, in his official capacity as the Attorney General of the United States; MICHAEL CARVAJAL, in his official capacity as the Director of the Federal Bureau of Prisons; and T.J. WATSON, in his official capacity as Complex Warden for Terre Haute Federal Correctional Complex, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE TO INTERVENE BY FATHER MARK O'KEEFE**

Defendants (the "Government"), by and through counsel, respectfully oppose Father Mark O'Keefe's motion to intervene in this litigation as of right pursuant to Fed. R. Civ. P. 24(a)(2), or permissively under Fed. R. Civ. P. 24(b)(2). Father O'Keefe is attempting to raise claims nearly identical to those asserted by the plaintiff, Rev. Dale Hartkemeyer, in this litigation: namely, that the Government's scheduling of executions during the COVID-19 pandemic violates his rights as a spiritual advisor for a condemned inmate under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §2000bb *et seq.*, and is arbitrary and capricious under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.* *See* Pl.'s Mot. for Preliminary Inj., ECF No. 7

(July 2, 2020) [hereinafter, "Pl.'s Mot."]; *see* O'Keefe Mot. to Intervene, ECF No. 42 (July 7, 2020). Father O'Keefe, like Rev. Hartkemeyer, contends that because of his age and because of the number of people that are expected to travel to and be present at the execution, he would be subject to a risk of exposure to COVID-19 if he chooses to attend the execution of Dustin Lee Honken on July 17, 2020, which he feels is compelled by his religious obligation.

Father O'Keefe's motion to intervene is futile and should be denied. Indeed, as the Government's opposition to Rev. Hartkemeyer's motion for preliminary injunction demonstrates, Father O'Keefe is unlikely to succeed on the merits of his RFRA and APA claims. Moreover, as established by the attached declaration of Rick Winter, *see* Ex. A, the Federal Bureau of Prisons ("BOP") will take every precaution to avoid the spread of COVID-19 to Father O'Keefe, including providing him with Personal Protective Equipment for purposes of his attendance at Mr. Honken's execution.

## ARGUMENT

To intervene as of right under Rule 24(a)(2), Father O'Keefe must demonstrate that he filed a timely application to intervene; that he has an interest relating to the subject matter of the action; that his interests would be impaired, as a practical matter, by the disposition of the action; and that Rev. Hartkemeyer inadequately represents his interests in this action. *See State v. City of Chicago*, 912 F.3d 979, 984 (7th Cir.), *cert. denied sub nom. Fraternal Order of Police Chicago Lodge No. 7 v. Illinois*, 140 S. Ct. 82 (2019) (quoting *Shea v. Angulo*, 19 F.3d 343, 346 (7th Cir. 1991). Even accepting as true "the non-conclusory allegations of the motion," *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995), Father O'Keefe cannot show that he has a legally cognizable interest that would be impaired because, as demonstrated by the Government's Opposition to Rev. Hartkemeyer's motion for preliminary injunction, he fails to state a claim under either RFRA or the APA.

As the Government explained in its recent Opposition, *see* Defs.' Opp. at 9-14, Supreme Court precedent forecloses Father O'Keefe's contention that the Government's prompt setting of Mr. Honken's execution imposes a substantial burden on his exercise of religion. *See Lyng v. Nw.*

2

*Indian Cemetery Protective Ass'n*, 485 U.S. 439, 448-49 (1988); *Bowen v. Roy*, 476 U.S. 700 (1986); *see also Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, No. 19-431 (U.S. Jul. 8, 2020) (Alito & Gorsuch, JJ., concurring) (noting that "in Bowen, the objecting individuals were not faced with penalties or 'coerced by the Governmen[t] into violating their religious beliefs'"). The execution schedule is purely a matter of the Government conducting its own internal affairs. Father O'Keefe is not being regulated by the Government here, and any burden on his free exercise is merely an "incidental effect of [a] government program[]," which the Supreme Court has said does not constitute a substantial burden. *See Lyng*, 485 U.S. at 450. The free exercise of religion does not allow an individual who is not subject to the government's coercive power to dictate how the government should organize its internal affairs. As the Supreme Court has recognized, "government simply could not operate if it were required to satisfy every citizen's religious needs and desires." *Id*. at 452.

Even if the Government's execution schedule could be deemed to substantially burden Father O'Keefe's exercise of religion—which it clearly cannot—the Government can demonstrate, as it has in Rev. Hartkemeyer's case, *see* Defs.' Opp. at 14-18, that it is employing the least restrictive means to further its compelling interest in the timely enforcement of Mr. Honken's capital punishment—an interest well recognized by the Supreme Court. Father O'Keefe would prefer that the Government postpone Mr. Honken's execution until "after the immediate threat of COVID-19 ha[s] passed, such as when a cure or vaccine is available." ECF No. 42-1, Proposed Compl. ¶ 53. Given the uncertainty as to the timing for the development of a vaccine or therapeutics, Father O'Keefe is seeking the same sort of indefinite delay as Rev. Hartekemeyer—a delay that would render it impossible for the Government to further its compelling interest in the timely administration of justice.

This is all the more so given that BOP is prepared to take the same extensive array of precautions to mitigate the risk to Father O'Keefe's health as it is planning to take for Rev. Hartkemeyer. *See* Defs.' Opp. at 6-8, 16-18 & Ex. A; *see also* Decl. of Rick Winter, Ex. A ¶¶ 6-7 (July 8, 2020) (adopting for purposes of the Government's opposition to Father O'Keefe's

intervention motion, the July 6, 2020 Declaration of Rick Winter, which is Exhibit A to Defs.' Opp.). BOP will give Father O'Keefe the opportunity to utilize Personal Protective Equipment ("PPE") in the form of face masks, gowns, gloves, and face guards. BOP also will limit Father O'Keefe's interaction with BOP staff and restrict his interaction with other witnesses, inmates, media, and the public; it will allow him to visit Mr. Honken in a non-contact visiting room that will be disinfected before his visit;[1] and BOP will permit Father O'Keefe inside the execution room at a social distance from all but his security escort who also will be wearing PPE in the form of an N-95 face mask, gloves, and a face guard. *See* Defs.' Opp. at 6-8, 16-18 & Ex. A. With these measures in place, the Government is likely to carry its burden of establishing that it is employing the least restrictive means of achieving its compelling interest by proceeding with the prompt execution of Mr. Honken. Father O'Keefe, like Rev. Hartkemeyer, fails to identify any other practical measure the Government can take while still proceeding with the scheduled execution, and his proposed alternative of indefinite delay is not one that can achieve the government's compelling interest. *See* O'Keefe Mot. to Intervene at 42 ("Father O'Keefe's claims, and the underlying facts and legal rights, mirror those at issue in the instant suit filed by plaintiff Dale Hartkemeyer.").

In addition, as explained in the Government's Opposition, *see* Defs.' Opp. at 18-25, Father O'Keefe's APA claim is equally specious. The Attorney General's decision to schedule Mr. Honken's execution was an agency action committed to agency discretion by law, and is therefore unreviewable under the APA. *See* 5 U.S.C. § 701(a)(2). Furthermore, Father O'Keefe is not within the "zone of interests" protected by RFRA, the Federal Death Penalty Act, or any relevant regulation. *See Am. Fed'n of Gov't Empls., Local 2119 v. Cohen*, 171 F.3d 460, 465 (7th Cir. 1999).

---

[1] If Father O'Keefe wishes to have physical contact with Mr. Honken for purposes of performing the Last Rites, he may do so in the holding cell of the execution facility. *See* Winter Decl. ¶ 7.

4

Finally, the Attorney General's decision was not arbitrary and capricious. Even aside from the compelling government interest in the timely enforcement of capital punishment, Department of Justice regulations mandate that the BOP Director schedule executions promptly after the lifting of the stay of a previously scheduled execution. 28 C.F.R. § 26.3(a). BOP is acutely aware of the risks posed by the COVID-19 pandemic and has taken appropriate measures to mitigate those risks while still performing its important duties. Accordingly, Father O'Keefe, like Rev. Hartkemeyer, has no likelihood of success on his APA claim, and thus, Father O'Keefe has no legally cognizable interest that would be impaired.

Similarly, Father O'Keefe's motion for leave to permissively intervene should be denied as futile for the reasons stated above. "Permissive intervention allows the district court to consider a wide variety of factors," *Planned Parenthood of Wisc. v. Kaul*, 942 F.3d 793 (7th Cir. 2019), including whether intervention would be futile. *See, e.g.*, *In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.*, Nos. 02–1484, 02–8472, 2008 WL 2594819, *5 (S.D.N.Y. Jun. 26, 2008) ("[C]ourts have held that futility is a proper basis for denying a motion to intervene.").[2] Given Father O'Keefe's inability to state a claim, he should not be permitted to intervene.

Finally, it is worth noting that if the Court is to weigh any equities here, they clearly favor the Government. "In 1993, after being indicted on federal drug trafficking charges, [Mr.

---

[2] In *Merrill Lynch*, the court cited the following in support of its futility point: *U.S. v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (upholding district court's denial of motion to intervene on futility grounds); *Williams & Humbert, Ltd. v. W. & H. Trade Marks, Ltd.*, 840 F.2d 72, 74 (D.C. Cir. 1988) (finding that Rule 24(a)(2)'s requirement that intervenor have legally cognizable interest depends in part on whether intervenor has stated legally sufficient claim); *Kirby v. Coastal Sales Assocs.*, 199 F.R.D. 111, 118 (S.D.N.Y. 2001); *Moss v. Stinnes Corp.*, No. 92 Civ. 3788(JFK), 1997 WL 530113 (S.D.N.Y. Aug. 25, 1997), *aff'd* 169 F.3d 784, 785 (2d Cir.1999) ("Mr. Moss' motion to intervene is denied because his proposed claims in intervention fail to state a valid claim for relief."); *Ceribelli v. Elghanayan*, No. 91 Civ. 3337, 1994 WL 529853 at *2 (S.D.N.Y. Sept. 28, 1994) (noting that legal futility is a basis for rejecting a proposed intervention under Fed. R. Civ. P. 24); *see also* Charles Alan Wright, Arthur R. Miller, and Mary Kay Wright, 7C Federal Practice & Procedure, § 1914 (3d ed.) at p. 523–24

Honken] and his girlfriend, . . . kidnapped and murdered a federal witness, the witness's girlfriend, and the girlfriend's two young daughters [aged six and ten]." *United States v. Honken*, 541 F.3d 1146, 1148 (8th Cir. 2008). The Government's interest in promptly implementing Mr. Honken's sentence is "magnified by the heinous nature" of his offense. *Execution Protocol Cases*, 955 F.3d at 127 (Katsas, J., concurring) (discussing Mr. Purkey's crimes). Mr. Honken's sentence has been upheld throughout Mr. Purkey's many years of direct and post-conviction review. *See Honken v. United States*, 42 F. Supp. 3d 937 (N.D. Iowa 2013) (vacating non-capital convictions under 28 U.S.C. § 2255, but otherwise denying relief), *aff'd*, *Honken v. United States*, Case No. 14-1329, Doc. 4150218 (8th Cir. 2014), *cert denied*, 136 S. Ct. 29 (2015). As such, the Government's interest in finally implementing the lawful capital sentence Mr. Honken incurred outweighs Father O'Keefe's interest in rescheduling Mr. Honken's execution.

## CONCLUSION

For the foregoing reasons, the Court should deny Father O'Keefe's motion for leave to intervene.

JOSH J. MINKLER
United States Attorney


By:      _s/ Shelese Woods_____
Shelese Woods
Assistant United States Attorney

---

(stating that "[t]he proposed pleading [in intervention] must state a good claim for relief or a good defense").

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2020, the foregoing was filed electronically through

ECF/CM. On this same date, electronic service will be made to all counsel of record through the

Court's ECF/CM system.


                                         s/ *Shelese Woods*
                                         Shelese Woods
                                         Assistant United States Attorney

Office of the United States Attorney
10 West Market Street, Suite 2100
Indianapolis, IN 46204
(317) 226-6333
(317) 226-6125 [Fax]