## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## TERRE HAUTE DIVISION

|  |  |  |
|---|---|---|
| DALE HARTKEMEYER (AKA SEIGEN) | ) | |
| Plaintiff, | ) | |
| FATHER MARK O'KEEFE | ) | |
| Intervenor. | ) | Case No. 2:20-cv-00336-JMS-DLP |
| v. | ) | |
| WILLIAM P. BARR, in his official capacity as the Attorney General of the United States; MICHAEL CARVAJAL, in his official capacity as the Director of the Federal Bureau of Prisons; and T.J. WATSON, in his official capacity as Complex Warden for Terre Haute Federal Correctional Complex, | ) | |
| Defendants. | ) | |

### DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION BY FATHER MARK O'KEEFE

Fifteen years ago, Dustin Lee Honken was convicted and sentenced to death by a federal court in Iowa for the "exceptionally heinous" crime of murdering of two prospective federal witnesses, along with one of their girlfriends and her two young daughters. *Barr v. Roane*, 140 S. Ct. 353, 353 (2019) (statement of Alito, J.). His conviction and sentence were affirmed on appeal, and he has exhausted his post-conviction remedies. Mr. Honken's initial execution date of January 15, 2020 was preliminarily enjoined by the U.S. District Court for the District of Columbia in his suit challenging the Government's lethal injection protocol. Upon the Supreme Court's instruction that the court of appeals adjudicate the appeal of that preliminary injunction with "appropriate dispatch," *id.* (mem.), the D.C. Circuit vacated the injunction and the Government promptly

rescheduled Mr. Honken's execution as required by regulation. He is currently scheduled to be executed on July 17, 2020.

Plaintiff-Intervenor Father Mark O'Keefe is Mr. Honken's spiritual advisor. He has intervened in this suit, which Plaintiff Rev. Dale Hartkemeyer initiated on July 2, 2020 seeking to enjoin the Government from carrying out the execution of a different inmate, Wesley Ira Purkey. *See* Compl., ECF No. 1. Rev. Hartkemeyer moved for a preliminary injunction on July 2, 2020, raising the same claims that Father O'Keefe raises now in his separate motion for a preliminary injunction: namely, that the Government's scheduling of executions during the COVID-19 pandemic violates his rights as a spiritual advisor for a condemned inmate under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §2000bb *et seq*., and is arbitrary and capricious under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq*. *See* Pl.'s Mot. for Prelim. Inj., ECF No. 7 (July 2, 2020) [hereinafter, "Pl.'s Mot."]; *see* O'Keefe Mot. for Prelim. Inj., ECF No. 61 (July 8, 2020) [hereinafter, "O'Keefe Mot."]. Father O'Keefe, like Rev. Hartkemeyer, contends that because of his age and because of the number of people that are expected to travel to and be present at the execution, attending an execution at FCC Terre Haute— which he asserts is compelled by his religious beliefs—would subject him to a risk of exposure to COVID-19. Notably, while Rev. Hartkemeyer has not yet decided whether to attend Mr. Purkey's execution, Father O'Keefe has expressly stated that he has agreed to accept any risks in order to attend Mr. Honken's execution on July 17, 2020. *See* O'Keefe Mot. at 14.

All of Father O'Keefe's APA arguments, and nearly all of his RFRA arguments, are identical to those presented by Rev. Hartkemeyer, which are now fully briefed. *See* Pl.'s Mot.; Defs.' Opp. to Pl.'s Mot. for Prelim. Injunction, ECF No. 33 (July 6, 2020) [hereinafter "Defs.' Opp."]; Pl.'s Reply in Support of Pl.'s Mot. for Prelim. Injunction, ECF No. 62. Indeed, Father O'Keefe states that his "claims mirror those of Rev. Dale Hartkemeyer, and Father O'Keefe adopts and incorporates the arguments and authorities in Rev. Hartkemeyer's papers in support of his parallel motion for a preliminary injunction." O'Keefe Mot. at 2. The Government in turn adopts and incorporates by reference its arguments opposing Rev. Hartkemeyer's motion for a

2

preliminary injunction, *see* Defs.' Opp., and only addresses herein any arguments unique to Father O'Keefe's RFRA claim (as the APA arguments are exactly the same). All of those arguments establish that Father O'Keefe, like Rev. Hartkemeyer, has no likelihood of success on the merits of his RFRA and APA claims and that the balance of equities tips in favor of the Government. This Court should therefore deny Father O'Keefe's motion for a preliminary injunction.

## I. FATHER O'KEEFE IS UNLIKELY TO SUCCEED ON HIS RFRA CLAIM BECAUSE HE CANNOT SHOW THAT HIS EXERCISE OF RELIGION WILL BE SUBSTANTIALLY BURDENED BY MR. HONKEN'S EXECUTION DATE

Father O'Keefe argues that the Government's prompt scheduling of Mr. Honken's execution substantially burdens his sincerely held religious obligation to attend Mr. Honken's execution in order to minister to Mr. Honken and "offer Mr. Honken the sacraments that will enable him to seek salvation." O'Keefe Mot. at 14.

Contrary to Father O'Keefe's characterization that the Government is "forcing [him] to choose between his religion and his well-being," *id.* at 17, no such coercion by the Government exists. Father O'Keefe is not the subject of government regulation here; he is under no government compulsion to change his religious practices or to attend Mr. Honken's execution; and he will not be penalized by the Government if he changes his mind and does not attend the execution. Indeed, the Government is no more "forcing" Father O'Keefe to come to FCC Terre Haute than hospitals are "forcing" priests to visit patients in COVID wards. Any risks he accepts by choosing to attend Mr. Honken's execution are the result of Father O'Keefe's own choice, not the Government's coercion. And any such risks are not a burden created by the Government; they are, quite the contrary, risks that the Government is working to mitigate in order to carry out its important duties. Indeed, like the rest of the country, the Government is coping with the pandemics by making adjustments while also carrying out essential government functions. That is no different from what is evidently also being done by Catholic priests throughout the country who also are employing various coping mechanisms to continue to minister to their flocks.

Father O'Keefe cannot avoid this conclusion by pointing to caselaw involving government regulation of plaintiffs, which have a coercive effect on plaintiffs' exercising of religion. O'Keefe

3

Mot. at 17, citing *Sherbert v. Verner*, 374 U.S. 398 (1963) (challenge to state statute disqualifying plaintiff from certain unemployment benefits due to her religious objection to working on Saturdays); *Thompson v. Holm*, 809 F.3d 376 (7th Cir. 2016) (challenge to state prison officials denying plaintiff-inmate's eligibility for meal accommodations in order to fast during Ramadan); *Nelson v. Miller*, 570 F.3d 868 (7th Cir. 1990) (challenge to state prison officials' denial of plaintiff-inmate's request for a meatless religious diet); *Hunafa v. Murphy*, 907 F.2d 46 (7th Cir. 1990) (challenge to state prison officials' denial of plaintiff-inmate's request to be served food on a tray that does not contain any pork due to religious reasons); *Univ. of Notre Dame v. Sebelius*, 988 F. Supp. 2d 912 (N.D. Ind. 2013) (challenge to Affordable Care Act requirement that employers provide employees with health insurance that covers contraceptive services). These cases are no different than the Seventh Circuit's decisions relied upon by Rev. Hartkemeyer, *Korte v. Sebelius*, 735 F.3d 654 (7th Cir. 2013), and *Koger v. Bryan*, 523 F.3d 789 (7th Cir. 2008), as they all involved coercive mandates directly on religious objectors. *See* Pl.'s Mot. at 13-14.

Here, in contrast, the Government is not regulating or coercing the plaintiff; it is merely carrying out its own internal affairs on its own property with respect to inmates in its custody who have been validly sentenced to death. Thus, the pertinent precedent includes cases such *Lyng*, 485 U.S. at 450, and *Bowen v. Roy*, 476 U.S. 700 (1986), which held that the incidental effects of the government conducting its own internal affairs do not constitute substantial burdens on the free exercise of religion. *See also Braunfeld v. Brown*, 366 U.S. 599, 606 (rejecting a similar free exercise challenge because any burdens by the challenged activity were "indirect"). Father O'Keefe does not meaningfully grapple with these precedents, which indeed two Supreme Court Justices cited with approval just yesterday. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, No. 19-431 (U.S. Jul. 8, 2020) (Alito & Gorsuch, JJ., concurring) (noting that "in *Bowen*, the objecting individuals were not faced with penalties or 'coerced by the Governemn[t] into violating their religious beliefs'").

Finally, to the extent Father O'Keefe seeks to bolster his RFRA claim by relying on the purported risk of COVID-19 infection to "several of the nuns to whom he ministers daily," and

arguing that such risk will substantially burden the nuns' religious practice by preventing Father O'Keefe from "administering the sacrament of Communion" to the nuns, O'Keefe Mot. at 13, 18, this argument is clearly precluded by third-party standing principles.  Namely, Father O'Keefe lacks standing to assert the rights of third parties who are not before the Court because he has not demonstrated the requisite close relation to those individuals nor do those individuals have any apparent impediment to bringing their own claims.  *See Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (holding that third-party standing, the litigant must have a close relation to the third party and there must exist some hindrance to the third party's ability to protect his or her own interest).  This leaves just the risk to Father O'Keefe himself, which, for the reasons discussed above and in our opposition to Rev. Hartkemeyer's motion, does not constitute a substantial burden under RFRA.

**II.    FATHER O'KEEFE IS UNLIKELY TO SUCCEED ON HIS RFRA CLAIM BECAUSE THE GOVERNMENT HAS A COMPELLING INTEREST IN PROCEEDING PROMPTLY WITH MR. HONKEN'S EXECUTION AND HAS EMPLOYED THE LEAST RESTRICTIVE MEANS OF FURTHERING THAT COMPELLING INTEREST**

Father O'Keefe does not dispute the Government's argument that it has a compelling interest in the timely enforcement of capital punishment.  As for the least restrictive means, he also does not seriously dispute that the Government will take various mitigation measures to avoid the spread of COVID-10 to him.  Indeed, in opposing Father O'Keefe's motion to intervene, the Government filed another declaration from BOP Regional Counsel Rick Winter in which Mr. Winter represents that BOP will "take the same precautions for Mr. Honken's execution as those described in [his] prior declaration [of July 6, 2020, see ECF No. 33, Ex. A. to the Government's Opposition to Rev. Hartkemeyer's motion for preliminary injunction], and will provide the same accommodations for Father O'Keefe as those described for Rev. Hartkemeyer."  *See* ECF No. 52-1 ¶ 7.  In addition, BOP will afford Father O'Keefe the ability to physically contact Mr. Honken

to perform the Last Rites: Father O'Keefe will be permitted to physically touch Mr. Honken in the holding cell of the execution facility while Mr. Honken is restrained. *Id.*[1]

The Government does not doubt that Father O'Keefe feels spiritually and morally bound to honor Mr. Honken's request to act as Mr. Honken's spiritual advisor. But if Mr. Honken were in the hospital dying of COVID-19 and asked Father O'Keefe to minister to him and provide him the Last Rites, Father O'Keefe would presumably feel the same sacred duty to attend to that request. Despite the pandemic, the Government still must carry out its important duties. As the Court well knows, and Father O'Keefe concedes, *see* O'Keefe Mot. at 11, the Southern District of Indiana federal courthouses reopened to the public on July 6, 2020, including the resumption of in-person plea and sentencing hearings. On July 20, 2020, single defendant criminal jury trials will resume, in which jurors will sit as close to each other as any of the witnesses will be in the USP Terre Haute execution facility. The Court is enforcing the wearing of face coverings and conducting screenings, but is not requiring the testing of every employee and every individual that enters the courthouse.[2] The State of Indiana has moved to Stage 4-4.5 of its five-stage reopening plan, which allows retail, malls, and commercial businesses to operate at full capacity while maintaining social distancing.[3] Police and fire departments still have to respond to emergencies.

---

[1] Father O'Keefe faults the Government for fundamentally misunderstanding his religious practice, stating that the performance of the Last Rites is a duty, not a matter of whether he wishes to do so. *See* ECF No. 61 at 17-18. The Government does not question what Father O'Keefe describes as his religious duties; it is simply taking account of the fact that Catholic priests are taking various mitigation measures to cope with COVID-19 in their deliverance of the Last Rites, including doing so without physical contact. *See* https://www.elpasotimes.com/story/news/2020/05/01/catholic-priest-brings-sacraments-sick-during-covid-19-coronavirus/3003845001/ (conducting Last Rites in an anteroom next to the patient's hospital room); https://www.latimes.com/california/. story/2020-04-11/last-rites-coronavirus-pandemic-catholics (conducting Last Rites through FaceTime with the priest standing in the hall outside the room).

[2] *See* Press Release, United States District Court Southern District of Indiana (June 26, 2020) https://www.insd.uscourts.gov/sites/insd/files/COVID%2019%20reopening%20PR%206.26.2020-FINAL.pdf.

[3] *See* Stage 4 (June 12th – July 3rd), https://backontrack.in.gov/files/BackOnTrack-IN_WhatsOpen-Closed-stage4.pdf; Stage 4.5 (June 4th – July 17th), https://www.backontrack.in.gov/files/BackOnTrack-IN_StagePosters_Stage4.5-12x18.pdf.

Public transit workers still have to drive buses. BOP staff must continue to go to work to manage the federal penitentiaries. And just last night the Supreme Court cleared the way for Texas to execute one of its own condemned inmates after a five-month hiatus in executions as a result of the pandemic. *See* https://www.cbsnews.com/news/texas-executes-billy-joe-wardlow-for-killing-elderly-man-nearly-30-years-ago/. The Texas inmate was put to death at 6:28 pm despite concerns raised by parties about the dangers presented by the pandemic. Present at the Texas execution were the inmate's fiancée, lead attorney, and two other friends, as well as a friend of the murder victim. *See* https://www.texastribune.org/2020/07/08/texas-execution-billy-wardlow/.

Where the Government has a compelling interest, as it does here, RFRA contemplates that there must be a means of satisfying that interest – it simply requires that means to be the least restrictive one. Father O'Keefe does not identify a single additional step the Government can take while still carrying out Mr. Honken's execution on July 17. Moreover, his reliance on the conditions of prior executions is misplaced – the Government has outlined numerous mitigation measures it is taking to address the exact issues he has raised. For example, Father O'Keefe cites the prison ministers' experience prior to the execution of Louis Jones in 2003 and worries that he will have to "stand 'shoulder to shoulder'" with Mr. Honken's legal team and family members. *See* ECF No. 61 at 13. Indeed, as explained to Father O'Keefe's counsel yesterday, *see* Ex. 1 (Email from AUSA S. Woods to Father O'Keefe's counsel M. Krauss (July 8, 2020)), Father O'Keefe will not be forced to visit with Mr. Honken at the same time as Mr. Honken's legal team. There will be approximately several hours for either Father O'Keefe or the legal team to visit Mr. Honken, leaving ample time for Father O'Keefe to meet with Mr. Honken separately from the legal team if he wishes. *Id.* Per BOP's Protocol, *see* ECF No. 33 at Ex. A-1, no other visitors are permitted to visit with Mr. Honken in the execution facility, so Father O'Keefe will not be standing shoulder-to-shoulder with anyone in the execution facility other than BOP staff. *Id.*

In addition, as previously detailed in Mr. Winter's July 6, 2020 declaration, Father O'Keefe's interaction with BOP staff and other witnesses, inmates, and members of the public (including media) will be minimal. *See* ECF No. 33 at Ex. A ¶¶ 6-15. As he concedes, no visitors

unrelated to the upcoming executions are being permitted at USP Terre Haute. *See* ECF No. 61 at 12. Moreover, he will not come into contact with the vast majority of BOP personnel involved in the execution. *See* ECF No. 33 at Ex. A ¶¶ 6-15. He will not be shuttled from the SCU to the execution facility with all the other "witnesses and prison staff," O'Keefe Mot. at 13; instead, he will be met at a designated area, given PPE, and will be escorted to the execution facility where he will be met by a BOP security escort wearing an N-95 face mask, a face shield, and gloves. *See* ECF No. 33 ¶ 12.

These are the least restrictive means to further the Government's compelling interest. Accordingly, Father O'Keefe is unlikely to succeed on his RFRA claim where he has not shown that BOP's scheduling of Mr. Honken's execution imposes a substantial burden on his exercise of religion and where the Government has shown that it has a compelling interest in the timely enforcement of a capital sentence and is employing the least restrictive means to do so while allowing Father O'Keefe to act as Mr. Honken's spiritual advisor.

## CONCLUSION

For these reasons, and as incorporated by reference to the Government's arguments in opposition to Rev. Hartkemeyer's motion for preliminary injunction, Defs.' Opp. at 9-27, Father O'Keefe is unlikely to succeed on his RFRA and APA claims. His motion for a preliminary injunction should therefore be denied.

JOSH J. MINKLER
United States Attorney

By: *s/ Shelese Woods*_____
Shelese Woods
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2020, the foregoing was filed electronically through ECF/CM. On this same date, electronic service will be made to all counsel of record through the Court's ECF/CM system.

s/ *Shelese Woods*
Shelese Woods
Assistant United States Attorney
Office of the United States Attorney
10 West Market Street, Suite 2100
Indianapolis, IN 46204
(317) 226-6333
(317) 226-6125 [Fax]