**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| _____ | : | |
| DALE HARTKEMYER (AKA SEIGEN), | : | |
| | : | |
| Plaintiff, | : | Case No. 2:20-CV-00336-JMS-DLP |
| | : | |
| v. | : | |
| | : | |
| WILLIAM P. BARR, in his official capacity as | : | |
| the Attorney General of the United States; | : | |
| MICHAEL CARVAJAL, in his official capacity | : | |
| as the Director of the Federal Bureau of Prisons; | : | |
| and T.J. WATSON, in his official capacity as the | : | |
| Complex Warden for the United States | : | |
| Penitentiary, Terre Haute, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF THE MOTION
OF FATHER MARK O'KEEFE FOR PRELIMINARY INJUNCTION**

Father O'Keefe adopts and incorporates the arguments, authorities, and evidence in support of Rev. Hartkemeyer's parallel motion for a preliminary injunction. (*See* Filing No. 6 (including attachments 6-2 to 6-30); Filing No. 7 at pp. 15-34; Filing No. 57; Filing Nos. 58 and 58-1; Filing Nos. 59, 59-1, 59-2; Filing No. 62.) Specifically with respect to Father O'Keefe, Defendants argue only that he is unlikely to succeed on his RFRA claim. This argument is without merit.

**I.   EXECUTING MR. HONKEN IN THE MIDST OF THE PANDEMIC IS A SUBSTANTIAL BURDEN ON FATHER O'KEEFE'S RELIGIOUS EXERCISE.**

Defendants continue to betray their fundamental misunderstanding of Father O'Keefe's duty as a Catholic priest. As a direct result of the Government's coercion, Father O'Keefe's choice to honor his duty to minister to Mr. Honken at the time of death, and to continue his essential daily ministry to the nuns at the monastery, carries the substantial burden of potentially contracting

1

Covid-19 himself and spreading it to those closest to him in the faith.[1]  There is no meaningful distinction between Father O'Keefe and the plaintiffs in the cases cited by Father O'Keefe and Rev. Hartkemeyer.  (*See, e.g.*, Filing No. 61 at p. 17.)  The Government did not order the Seventh-Day Adventist in *Sherbert* to work or not to work, or the prisoners in *Thompson*, *Nelson*, and *Hunafa* to eat or not to eat—in each instance, that "choice" rested with the individual plaintiff. But in each instance, a substantial burden existed because the Government undertook an action that forced the plaintiff to choose between the exercise of religion, on the one hand, and physical or economic well-being, on the other.

Defendants wrongly downplay the burden on Father O'Keefe's performance of his religious obligation as "the incidental effects of the government conducting its own internal affairs."  Defendants repeat the arguments they made in response to Rev. Hartkemeyer's motion, citing the same cases, and Father O'Keefe therefore refers to the arguments that Rev. Hartkemeyer made on reply.  (Filing No. 62 at pp. 6-11.)  Moreover, Defendants ignore the unbroken tradition of clergy at executions in both Catholicism and  American history.  (*See* Filing No. 61 at pp. 5-7.) As the priest with a sacred duty to minister to a condemned prisoner, Father O'Keefe is not some incidental bystander—his is a critical role going back thousands of years and protected by statute and Defendants' own regulations.

---

[1] Contrary to Defendants' suggestion, Father O'Keefe is not arguing that the risk of Covid-19 "will substantially burden the nuns' religious practice."  (Filing No. 65 at pp. 4-5.)  Father O'Keefe's duty to minister to the nuns adds to the burden on his own religious practice:  because of the Defendants' insistence on executing Mr. Honken now, Father O'Keefe takes on the risk not just of contracting Covid-19 himself, but spreading it to the nuns to whom he administers Communion on a daily basis.  (*See* Filing No. 61 at pp. 2, 16, 18; Filing No. 60-1 (O'Keefe Decl.) ¶¶ 14, 18-20.)  The risk of impairing the health and lives of others is a burden that Father O'Keefe himself must bear if he is to meet all of his religious obligations, both in and out of the prison.

2

Defendants are simply wrong to characterize the execution of Mr. Honken as the Government "carrying out its internal affairs." (Filing No. 65 at p. 4.) "[T]he execution of a human being by the state is perhaps the most solemn and significant act a government can perform. It should not be reduced to an invisible, bureaucratic function." *United States v. Sampson*, 300 F. Supp. 2d 278, 280 (D. Mass. 2004), *aff'd*, 486 F.3d 13 (1st Cir. 2007). It is disappointing that the Government would compare the imposition of capital punishment to the assignment of a social security number for agency tracking purposes. *See Bowen v. Roy*, 476 U.S. 693, 700 (1986).

## II.   DEFENDANTS HAVE FAILED TO SHOW THE "COMPELLING INTEREST" AND "LEAST RESTRICTIVE MEANS" AS RFRA REQUIRES.

### A.   Defendants Have Failed To Show A Compelling Interest in Executing Mr. Honken During A Surging Pandemic.

Defendants assert that no one disputes the Government's "compelling interest in the timely enforcement of capital punishment." (Filing No. 65 at p. 5.) But the issue is whether the Government has a compelling interest in executing Mr. Honken in the midst of a surging pandemic. It does not—especially after years of delay of its own making. (*See* Filing No. 7 at pp. 21-23; Filing No. 62 at pp. 12-15.) The Supreme Court stated just yesterday that "[i]n order to show that it has a 'compelling interest' within the meaning of RFRA, the Government must clear a high bar." *Little Sisters of the Poor v. Pennsylvania,* 2020 WL 3808424 at *18 (Alito, J., concurring).

Only the gravest abuses endangering a permanent interest can justify limitation on the free exercise of religious belief. *Id.* Defendants cannot meet this exacting standard. The question here is not *whether* the Government can execute Mr. Honken, but *when* it can do so without burdening Father O'Keefe's religious exercise by forcing him to choose between risking exposure to COVID-19 or abstaining from his religious duty to Mr. Honken. Delaying the execution simply does not

3

constitute the "gravest abuse" endangering "permanent interest."  It is simply a temporary measure to relieve the substantial burden that has been placed on Father O'Keefe.

> **B.**    **Defendants Have Failed To Show That The Government Will Use The Least Restrictive Means To Carry Out Its Interests.**

The least restrictive means standard is "exceptionally demanding." *Little Sisters* at *20 (Alito, J., concurring). The Government must show it has no alternative means of meeting its goal. *Id.*  The Government's goal is to execute Mr. Honken, but it need not do so on July 17.

Defendants argue that their "various mitigation measures" with respect to Covid-19 suffice under RFRA.  However, the fact that the Government is taking these measures proves only that serious Covid-19 risks must be addressed.  It does not prove that the Government's chosen measures will effectively  address them.  Again, Rev. Hartkemeyer has amassed considerable evidence demonstrating just how deficient the Government's measures are—wherever a spiritual advisor is located and whomever he or she encounters. (*See, e.g.*, Filing No. 6-25; Filing No. 57; Filing No. 58; Filing No. 62 at pp. 2-6.)

If anything, the risk to Father O'Keefe is even greater, because Mr. Honken is scheduled to be the third man executed in five days.  By the time Father O'Keefe arrives, hundreds of people from across the country will have been throughout the facility for extended periods—not even counting the individuals involved in Mr. Honken's execution.  The fact that Father O'Keefe may not come into contact with the "vast majority" of BOP personnel, as the Government claims, is no answer to the serious risks posed by his unquestioned contact with some of those personnel.  And in the Government's own recounting, those personnel Father O'Keefe will encounter will have themselves intermingled widely with hundreds of other personnel in the days leading up to the execution, aggravating the risks that they will be carriers. *See In Re Matter of Federal Bureau of*

*Prisons' Execution Protocol Cases*, No. 1:19-mc-145-TSC, Declaration of Rick Winter ¶¶ 5-8, ECF No. 54 (D.D.C. Nov. 21, 2019).

Tellingly, Defendants also ignore their most recent communication to Father O'Keefe about the risk that Covid-19 poses to ministering at USP Terre Haute: "FCC Terre Haute is <u>NOT</u> allowing volunteer [ministry] entry the Complex at this time. Additionally, all training has been postponed." (Filing No. 61-4.) This ban on religious volunteers has been in place for months with no prospect of being lifted—except as needed to hasten executions on the Government's schedule.

Defendants assert that "[d]espite the pandemic, the Government still must carry out its important duties." (Filing No. 65 at p. 6.) They go so far as to compare the Government's "duty" here to what they presume would be Father O'Keefe's duty to minister to Mr. Honken if he were dying of Covid-19. (*Id.*) But Mr. Honken is not dying of Covid-19. He will die because the Government is executing him. And the Government has it within its power to execute Mr. Honken without also burdening Father O'Keefe's religious practice by putting him at risk of Covid-19. Because there is a reasonable alternative that satisfies the Government's interest in executing Mr. Honken, yet diminishes the burden on Father O'Keefe, conducting the execution on July 17 is not the "least restrictive means" that RFRA requires.

### CONCLUSION

For these reasons, and incorporating by reference the arguments, authorities and evidence advanced by Rev. Hartkemeyer, Father O'Keefe respectfully requests that the Court grant his Motion for a Preliminary Injunction.

Dated:   July 9, 2020

Respectfully submitted,

**PLAINTIFF INTERVENOR
FATHER MARK O'KEEFE, OSB**

By:      */s/  Abigail A. Clapp*

Abigail A. Clapp (Ind. Atty. No. 25444-45)
Greenberg Traurig, LLP
77 W. Wacker Dr., Ste. 3100
Chicago, IL   60601
Tel.    (312) 456-8400
Fax     (312) 899-0393
Email   ClappA@gtlaw.com

Edward C. Wallace*
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166
Tel:  (212) 801-9200
WallaceE@gtlaw.com

Michael M. Krauss (*pro hac vice*)
Greenberg Traurig, LLP
90 South Seventh Street, Suite 3500
Minneapolis, MN  55402
Tel:  (612) 259-9700
KraussM@gtlaw.com

Kyle R. Freeny (*pro hac vice*)
Greenberg Traurig, LLP
2101 L Street, N.W., Suite 1000
Washington, DC  20037
Tel:  (202) 331-3100
FreenyK@gtlaw.com


\**pro hac vice* motion forthcoming

6