IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

|  |  |
|---|---|
| DALE HARTKEMEYER (AKA SEIGEN)<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM P. BARR, in his official capacity as the Attorney General of the United States; MICHAEL CARVAJAL, in his official capacity as the Director of the Federal Bureau of Prisons; and T.J. WATSON, in his official capacity as Complex Warden for Terre Haute Federal Correctional Complex,<br><br>Defendants. | Case No. 2:20-cv-00336-JMS-DLP |

**SECOND SUPPLEMENTAL DECLARATION OF DR. JOE GOLDENSON**

I, Dr. Joe Goldenson, declare as follows under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      I am a medical physician with 33 years of experience in correctional health care. For 28 years, I worked for Jail Health Services of the San Francisco Department of Public Health. For 22 of those years, I served as the Director and Medical Director.  In that role, I provided direct clinical services, managed public health activities in the San Francisco County jail, including the management of HIV, tuberculosis, Hepatitis C, and other infectious diseases in the facility, planned and coordinated the jail's response to H1N1, and administered the correctional health enterprise, including its budget, human resources services, and medical, mental health, dental, and pharmacy services.

2.      I served as a member of the Board of Directors of the National Commission on Correctional Health Care for eight years and was past President of the California chapter of the American Correctional Health Services Association. In 2014, I received the Armond Start Award of Excellence from the Society of Correctional Physicians, which recognizes its recipient as a representative of the highest ideals in correctional medicine.

3.      For 35 years, I held an academic appointment as an Assistant Clinical Professor at the University of California, San Francisco.

1

4.      I have worked extensively as a correctional health medical expert and court monitor. I have served as a medical expert for the United States District Court for the Northern District of California for 25 years. I am currently retained by that Court as a medical expert in *Plata v. Newsom*, Case No. 3:01-cv-01351 (N.D. Cal.), to evaluate medical care provided to inmate patients in the California Department of Correctional Rehabilitation. I have also served as a medical expert/monitor at Cook County Jail in Chicago and Los Angeles County Jail, at other jails in Washington, Texas, and Florida, and at prisons in Illinois, Ohio, and Wisconsin.

5.      On July 1, 2020, I signed an initial declaration that was submitted in this case, and on July 8, 2020 I submitted a supplemental declaration.

6.      Since the time of my July 8 declaration, the COVID-19 pandemic has continued to escalate around the country and in Indiana.[1] The Indiana statewide ventilator usage is at 84% of capacity as of today, July 12, 2020.[2]

7.      Counsel for Rev. Hartkemeyer provided me with a new declaration, dated today, July 12, 2020 from Rick Winter. The new declaration is of significant concern with respect to the risk to Rev. Hartkemeyer in entering the prison and attending the execution on July 15, 2020.

8.      In my prior declarations I described the risk that staff could bring COVID-19 into the facility and expose other staff, prisoners, or witnesses involved in the execution. The new Winter declaration confirms the worst case scenario: a known exposure from an infected staff person who has been in contact with other staff involved in carrying out the executions and who has been in the housing unit with the individuals scheduled for execution. This infected individual could have infected other staff members who were in meetings or enclosed, indoor spaces with him and who are now pre-symptomatic or asymptomatic. These individuals may remain pre-symptomatic for between 2 and 14 days, or could remain asymptomatic, but contagious, for the duration of the infection.

9.      In order to address this known exposure, the Government needs to identify all individuals who were exposed – through meetings or indoor settings – to the infected person and place all of those individuals on a 14-day quarantine. This would include at least all of those BOP staff and law enforcement who attended the "law enforcement meeting" to prepare for the executions, all BOP staff and law enforcement who attended "the meeting regarding the handling of demonstrators", and all BOP staff and all prisoners in the SCU who had contact with or shared airspace with the infected staff member when he "attended to an issue at the SCU." Decl. Winter July 12, 2020, ¶ 6. There may be others who need to be quarantined as well. For example, if the individual passes through security as part of his workday, the security staff are another group who may need to be quarantined. As I explained in my previous declarations, the poor ventilation and likelihood of airborne spread

---

[1] See NBC Chicago, Coronavirus in Indiana: State Reports Highest Increase in COVID-19 Cases in More Than 2 Months, July 11, 2020, https://www.nbcchicago.com/news/local/coronavirus-in-indiana-state-reports-highest-increase-in-covid-19-cases-in-more-than-2-months/2303511/; New York Times, New Coronavirus Cases in U.S. Soar Past 68,000, Shattering Record, July 10, 2020, https://www.nytimes.com/2020/07/10/world/coronavirus-updates.html.
[2] See Indiana, Indiana COVID-19 Dashboard, July 12, 2020, https://www.coronavirus.in.gov/2393.htm.

means that all of those individuals in those encounters must be considered at risk of having contracted COVID-19, and potentially now infected with COVID-19 themselves.

10.     The Government will then need to track through testing those exposed individuals.  If any of the quarantined individuals are sick, they will then need to trace the contacts of those infected individuals and place them on quarantine, with the 14-day clock running from the last date of contact.   It may take several weeks to determine who is carrying the virus as a result of this exposure.  The best case scenario will require a 14-day quarantine from July 8, the last day the infected person was in the prison and potentially exposed others to the virus

11.     The BOP's suggestion that individuals exposed to the infected person will not be allowed to come into contact with witnesses "[f]or the duration of the execution or until a negative test is obtained," is an inadequate measure to determine which staff are at risk of spreading the disease to witnesses.  Winter Decl. ¶ 9.  An exposed individual could test negative today and become ill later within the quarantine period.   Of course, this just addresses the circles of potential infection from with this one person's infection; even after this time period has expired, there still remains a substantial risk that other individuals involved in the execution are infected and will spread the disease.  Indeed, BOP only learned about this person's illness because of his self-disclosure.

12.     Another significant problem revealed by the new Winter declaration is that the staff individual who has tested positive did not always wear a mask while at the prison. (Winter Decl. ¶).  By not wearing a mask, the infected individual significantly increased the likelihood that others will become sick.  The fact that he was permitted to engage with others without a mask suggests the lack of adequate compliance and enforcement of even the limited COVID-19 policies the Government described adopting in advance of the execution.  The July 6, 2020 Declaration signed by Mr. Winter previously reported that the BOP policy is that "all BOP staff are required to wear face masks." Winter July 6, 2020 Decl. ¶ 7.  The fact that an individual involved in the planning of this execution was not wearing a mask indicates a critical break down in BOP policy.  The BOP needs to conduct an assessment of its policies enforcement to determine how and why such a basic requirement was not followed and address this breakdown.

13.     I previously identified the BOP measures as inadequate to protect the health of a medically vulnerable individual to COVID-19, including the lack of testing, ventilation concerns, inadequate PPE, and visitation risks associated with the conditions in the Special Confinement Unit and in the execution chamber itself.  All of those concerns are now significantly escalated by the known recent exposure to a countless number of individuals at the prison, including significant numbers of staff and potentially even the individuals scheduled for execution.

14.     Rev. Hartkemeyer cannot attend the execution on July 15, 2020 without being at grave risk for serious illness and death.

3

      I declare under penalty of perjury that the foregoing is true and correct. Executed on July 12, 2020 in Alameda County, California.

_____
Dr. Joe Goldenson